[No. 15706. In Bank.—December 4, 1894.]

## J. F. CHAPMAN, APPELLANT, v. THE STATE OF CALIFORNIA, RESPONDENT.

NEGLIGENCE—LIABILITY OF STATE—NEGLIGENT ACTS OF OFFICERS.—In the absence of a statute voluntarily assuming such liability the state is not liable in damages for the negligent acts of its officers while engaged in discharging ordinary official duties pertaining to the administration of the government of the states.

ID.—POWER OF LEGISLATURE—CONSTITUTIONAL LAW—GIFT.—Under section 31 of article IV of the constitution of this state, forbidding the legislature to make any gift of public money, the legislature has no power to create a liability against the state for any past acts of negligence on the part of its officers.

ID.—BREACH OF CONTRACT—LIABILITY OF STATE—NEGLECT OF HARBOR COMMISSIONERS TO REPAIR WHARF—DAMAGES FOR LOSS OF COAL.—A cause of action for damages for the loss of coal received at a public wharf, under the jurisdiction of the state harbor commissioners, in consideration of wharfage and dockage paid to them, and which was agreed to be delivered on such wharf for removal therefrom, and which was lost by the breaking away of the wharf, through neglect of the harbor commissioners to keep the wharf in repair, is grounded in breach of contract, and not merely upon the negligence of the harbor commissioners; and the state is liable for the loss of the coal.

ID.—STATE WHEN BOUND AS AN INDIVIDUAL.—The state, in all of its contracts and dealings with individuals, must be governed by the same rules which govern in determining the rights of private citizens contracting and dealing with each other.

ID.—DUTY AND LIABILITY OF WHARFINGER—NEGLECT OF ORDINARY CARE. A wharfinger is bound to return or deliver the goods according to his contract, and is impliedly bound by his contract as such to exercise ordinary care for their preservation and safety, and is liable for breach of his contract in case of loss of the goods by reason of an unsafe condition of the wharf, which ordinary care would have enabled him to ascertain and remedy.

ID.—ASSUMPSIT—ACTION UPON CONTRACT—DAMAGES FOR NEGLIGENCE.— The liability of the wharfinger for breach of contract by negligence, causing the loss of the goods intrusted to him, was enforceable at common law by an action of *assumpsit;* and, under our practice, the owner or consignee may sue upon the contract for the damages sustained by such negligence.

ID.—RIGHT TO SUE STATE UPON CONTRACT—NEW REMEDY FOR PREVIOUS LIABILITY—CONSTITUTIONAL LAW.—The liability of the state upon the contract of the harbor commissioners safely to deliver goods at a public wharf accrued at the time of its breach, when the goods were lost; and though the only remedy then existing was to present the claim to the state board of examiners for allowance, or to appeal to the legislature for an appropriation to pay the same, if the right to sue the state is afterwards given by law as a new remedy upon its contracts the legis-

lature does not thereby create any liability or cause of action against the state where none existed before, and its legislation giving the remedy by action is not unconstitutional.

ID.—CONCLUSIVENESS OF ACTION OF BOARD OF EXAMINERS.—The action of the board of examiners in rejecting a claim for breach of contract on the part of the state is not conclusive in an action allowed by law to be instituted upon the contract, and such rejection is no bar to an action upon the rejected claim.

CONSTRUCTION OF DECISIONS—GENERAL LANGUAGE.—The general language found in the opinion rendered in the decision of a case must be construed with reference to the particular facts then before the court.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.

The facts are stated in the opinion of the court.

*Dodge & Fry*, for Appellant.

Plaintiff's right to recover is amply sustained by the following authorities: Shearman and Redfield on Negligence, secs. 251, 259; *Sipple* v. *State*, 99 N. Y. 284; *Ballou* v. *State*, 111 N. Y. 496; *People* v. *Stephens*, 71 N. Y. 527; *Nickerson* v. *Tirrell*, 127 Mass. 236; *People* v. *Miles*, 56 Cal. 401; *O'Rourke* v. *Peck*, 40 Fed. Rep. 907; *Newall* v. *Bartlett*, 114 N. Y. 399.

*Attorney General William H. H. Hart*, and *Deputy Attorney General Oregon Sanders*, for Respondent.

The state is not responsible for the alleged negligence of its officers. (*Green* v. *State*, 73 Cal. 29; *Bourn* v. *Hart*, 93 Cal. 321; 27 Am. St. Rep. 203.) The plaintiff presented his claim to the state board of examiners and it was rejected. The court will take judicial knowledge of the action of that board. The decision of the board was a judgment, and the only remedy left to plaintiff was an appeal to the legislature. (Pol. Code, sec. 672; *Cahill* v. *Colgan*, Cal., Nov. 26, 1892; not reported.)

DE HAVEN, J.—Action for damages brought by the plaintiff as assignee of the firm of "John Rosenfeld's Sons." In the superior court a demurrer to the complaint was sustained, and judgment thereupon rendered

in favor of the defendant. The complaint, omitting merely formal and immaterial averments, may as against a general demurrer be construed as alleging, in substance, that on August 10, 1891, the defendant, in consideration of wharfage and dockage charges, paid to its officers, the state board of harbor commissioners, received upon one of its public wharves, situate in the city of San Francisco, and under the jurisdiction and control of the state board of harbor commissioners, about one hundred and thirty tons of coal belonging to the assignors of plaintiff, and to be removed by them from such wharf; and that on said day a large portion of the wharf on which this coal was placed broke and gave way " by reason of the negligence, omission, and carelessness of defendant, its officers, and agents, . . . . in failing and neglecting to keep said wharf in good and sound condition and repair"; and all the coal of plaintiff's assignors then on the wharf was sunk in the bay of San Francisco, and became a total loss, to their damage in the sum of twelve hundred and sixty-six dollars and forty-seven cents, the alleged value of said coal.

The complaint further alleges that a claim for the damages so sustained was duly presented to the state board of examiners for allowance, and the same was by said board rejected on September 13, 1893. The prayer of the complaint is for a judgment against defendant for the sum of twelve hundred and sixty-six dollars and forty-seven cents, and interest thereon from August 10, 1891. The demurrer was upon the general ground that the complaint does not state facts sufficient to constitute a cause of action. And also set forth, as a special ground, that "the said complaint shows upon its face that the claim against the state, which is the subject matter of the action of plaintiff, was duly and legally presented to the state board of examiners of this state prior to the commencement of this action for allowance, and was by said board rejected and disallowed, and the

said action of said board in the premises has never been reversed, but remains in full force and effect."

1. It is claimed by the plaintiff that he is entitled to maintain this action under the permission and authority given by the act authorizing suits against the state, approved February 28, 1893 (Stats. 1893, p. 57). The first section of this act provides as follows: "All persons who have, or shall hereafter have, claims on contract or for negligence against the state, not allowed by the state board of examiners, are hereby authorized, on the terms and conditions herein contained, to bring suit thereon against the state in any of the courts of this state of competent jurisdiction, and prosecute the same to final judgment."

The cause of action set forth in the complaint arose prior to the passage of the act just referred to, and it is argued by the attorney general that at the time when the coal belonging to the assignors of the plaintiff was lost, the state was not liable for the damage occasioned by said loss, and growing out of the alleged negligence of its officers in charge of the wharf mentioned in the complaint; and that the act should not be construed as intended to create any liability against the state for such past negligence. It is well settled that, in the absence of a statute voluntarily assuming such liability, the state is not liable in damages for the negligent acts of its officers while engaged in discharging ordinary official duties pertaining to the administration of the government of the state. (*Bourn* v. *Hart*, 93 Cal. 321; 27 Am. St. Rep. 203; Story on Agency, sec. 319.)

It is also true that under section 31 of article IV of the constitution of this state, which forbids the legislature from making any gift of public money or other thing of value to any person, the legislature has no power to *create* a liability against the state for any such past act of negligence upon the part of its officers.

If, therefore, the present action, based as it is upon a loss accruing before the enactment of the statute of February 28, 1893, authorizing suits against the state, is to

be regarded as one for the recovery of damages arising out of the negligence of the officers of the state in the discharge of a strictly governmental duty, it cannot be sustained; but we are clearly of the opinion that the cause of action alleged in the complaint is not of this character. It is not founded upon negligence constituting a tort, pure and simple and unrelated to any contract, but is substantially an action for damages on account of the alleged breach of a contract.

The facts stated in the complaint show that the defendant, in consideration of wharfage paid to it, received upon one of its public wharves the coal belonging to plaintiff's assignors, and to be delivered to them on such wharf for removal therefrom. A wharfinger is one who for hire receives merchandise on his wharf, either for the purpose of forwarding or for delivery to the consignee on such wharf, and the matters alleged in the complaint show a contract of the latter character, and the state is bound thereby to the same exent as a private person engaged in conducting the business of a wharfinger would be under a similar contract. The principle that a state is bound by the same rules as an individual in measuring its liability on a contract is well expressed by Allen, J., in his concurring opinion in the case of *People* v. *Stephens*, 71 N. Y. 549, in which he said: "The state in all its contracts and dealings with individuals must be adujdged and abide by the rules which govern in determining the rights of private citizens contracting and dealing with each other. There is not one law for the sovereign, and another for the subject. But when the sovereign engages in business and the conduct of business enterprises and contracts with individuals, whenever the contract in any form comes before the courts the rights and obligations of the contracting parties must be adjusted upon the same principle as if both contracting parties were private persons. Both stand upon equality before the law, and the sovereign is merged in the dealer, contractor, and suitor."

(See, also, *Carr* v. *State*, 127 Ind. 204; 22 Am. St. Rep, 624.)

What, then, was the nature and extent of the obligation assumed by the state when, in consideration of the wharfage paid by them, it received the coal of plaintiff's assignors upon its wharf?

"The wharfinger is bound to return or deliver the goods according to his contract." (Edwards on Bailments, 3d ed., sec. 362.) A wharfinger is impliedly bound by his contract as such to exercise ordinary care for the preservation and. safety of property intrusted to him (Edwards on Bailments, 3d ed., sec. 359), and this imposes upon him the duty to exercise ordinary care to ascertain the condition of his wharf, that he may know whether it is reasonably safe for the purposes for which he hires it; and, if merchandise is received by him upon a wharf which is unsafe, and is thereby lost, so that he cannot deliver it according to his contract, the wharfinger is liable therefor if ordinary care would have enabled him to know the condition of his wharf; and such negligence on his part will be treated as a failure to exercise ordinary care for the safety of the property intrusted to him. This negligence, however, and the consequent loss of the goods intrusted to him, would be a breach of the terms of his contract, and his liability therefor could have been enforced at common law by an action of *assumpsit* (1 Chitty on Pleading, *114; *Baker* v. *Liscoe*, 7 Term Rep. 171); and under our practice the owner or consignee may sue upon the contract for the damages sustained by reason of such negligence. "The wharfinger's responsibility begins as soon as he acquires the custody of the goods, and ends when he has fulfilled his express or implied contract with respect to both." (Edwards on Bailments, sec. 357.)

And the supreme court of Washington in the case of *Oregon Improvement Co.* v. *Seattle Gaslight Co.*, 4 Wash. 634, in passing upon the question of the liability of a wharfinger upon his contract as such, by reason of his wharf giving way and precipitating into the waters

beneath, a quantity of shale which had been received thereon, said: "This was a contract of bailment. The contract was proven, the loss was proven, and the negligence of respondent was proven, and the measure of the damages is the value of the shale."

We are entirely satisfied that plaintiff's cause of action, as alleged in the complaint, arises upon contract, and that the liability of the state accrued at the time of its breach; that is, when the coal was lost through the negligence of the officers in charge of the state's wharf, although there was then no law giving to the plaintiff's assignors the right to sue the state therefor. At that time the only remedy given the citizen to enforce the contract liabilities of the state, was to present the claim arising thereon to the state board of examiners for allowance, or to appeal to the legislature for an appropriation to pay the same; but the right to sue the state has since been given by the act of February 28, 1893, and in so far as that act gives the right to sue the state upon its contracts, the legislature did not create any liability or cause of action against the state where none existed before. The state was always liable upon its contracts, and the act just referred to merely gave an additional remedy for the enforcement of such liability, and it is not, even as applied to prior contracts, in conflict with any provision of the constitution.

"The fact that the state is not subject to an action in behalf of a citizen does not establish that he has no claim against the state, or that no liability exists from the state to him. It only shows that he cannot enforce against the state his claim, and make it answer in a court of law for its liability. What is made out by this objection is not that there is no liability and no claim, but that there is no remedy." ( *Coster* v. *Mayor of Albany*, 43 N. Y. 407.)

2. It is further argued in behalf of the state that the rejection of plaintiff's claim by the state board of examiners has the effect of a judgment, and constitutes a bar to this action; and in support of this contention the

case of *Cahill* v. *Colgan* (Cal., Nov. 22, 1892), 31 Pac. Rep. 614, is cited. That case is not authority for such a proposition. The court there decided that when a claim had been presented to the state board of examiners and approved, and an appropriation made by the legislature to pay it, the approval by the board of examiners was conclusive upon the controller as to the value of the services rendered by the claimant, and the amount to which he was entitled; and the general language found in the opinion in that case, as to the conclusive effect of the approval or rejection of a claim by the state board of examiners, must be construed with reference to the particular facts then before the court. But a sufficient answer to the contention of the defendant on this point is that the act, under the authority of which this suit is brought, contemplates that claims against the state shall first be presented to the state board of examiners for allowance, and, as we construe its language, it is only on claims so presented, and "not allowed by the state board of examiners," that the state gives its consent to be sued; and certainly as to claims which have been approved by that board there could be no necessity for such a remedy.

Judgment reversed, with directions to overrule the demurrer to the complaint.

FITZGERALD, J., GAROUTTE, J., McFARLAND, J., HARRISON, J., VAN FLEET, J., and BEATTY, C. J., concurred.