Filed 2/24/25  Doe v. Acalanes Union High School District CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JANE DOE,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>ACALANES UNION HIGH SCHOOL DISTRICT,<br><br>        Defendant and Respondent. | A169013<br><br><br>(Contra Costa County<br>Super. Ct. No. C22-02613) |

This is an appeal from judgment after the trial court sustained the demurrer of defendant Acalanes Union High School District (District) to the complaint filed by plaintiff Jane Doe.  According to this complaint, Doe was sexually abused by her high school English teacher, an employee of the District, in approximately 2007 and 2008, when she was 17 years old.

While Doe initially allowed her sexual assault claims to expire without pursuing them, her claims were revived when the Legislature enacted Assembly Bill No. 218 (2017–2018 Reg. Sess.) (Stats. 2019, ch. 861, § 1) (Assembly Bill No. 218), which, effective January 1, 2020, amended Code of Civil Procedure section 340.1[1] and Government Code section 905.  This bill

---

[1] Unless otherwise stated, all statutory citations herein are to the Code of Civil Procedure.

authorized plaintiffs to bring childhood sexual assault claims against public entities for a limited three-year period that otherwise would have been barred due to statute of limitation or claim presentation requirements. (Code Civ. Proc., § 340.1, former subd. (q).) The Legislature enacted Assembly Bill No. 218 in recognition of the fact that victims of childhood sexual abuse faced many challenges in coming forward to pursue claims against those responsible for their abuse, despite often suffering lifelong residual physical and psychological trauma. The Legislature therefore sought to expand the ability of victims to hold those responsible accountable by seeking justice through our courts. (*Los Angeles Unified School Dist. v. Superior Court* (2023) 14 Cal.5th 758, 777.)

In sustaining the District's demurrer to Doe's complaint, the trial court found that Assembly Bill No. 218 violated the California Constitution's prohibition against gifts of public funds (Cal. Const., art. XVI, § 6) to the extent it authorized the revival of a previously unenforceable childhood sexual assault claim. We disagree and, accordingly, reverse the judgment and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

As alleged in the operative complaint, in approximately 2007 and 2008, Doe was a 17-year-old senior at Miramonte High School, an institution operated by the District, when her English teacher, Mark Christopher Litton, began "sexually grooming" her and other students.[2] After building a relationship of trust with Doe by, among other things, complimenting her intelligence and maturity and sharing and recommending books, Litton

---

[2] Doe (Jane Doe No. 1) brought this action along with two other alleged victims, Jane Doe No. 2 and Jane Doe No. 3. Jane Doe No. 1, however, is the only appellant in this appeal. Accordingly, we do not address Jane Doe Nos. 2–3 or their allegations.

began sexually exploiting Doe. By the summer of 2008, when Doe had graduated and turned 18 years old, Litton's sexual harassment and sexual assault escalated to rape. Although "a close friend" reported to several school personnel that Litton sexually assaulted one of his former students (referring to Doe), the school failed to investigate the allegation or remove Litton from his position.

On December 6, 2022, Doe filed a complaint for damages against the District, Miramonte High School, and Does 1–50, asserting causes of action for negligence; negligent hiring, retention and supervision; child sexual abuse (vicarious liability); violation of the Ralph Civil Rights Act of 1976 (Civ. Code, § 51.7); and intentional infliction of emotional distress.

On February 23, 2023, the District demurred to the complaint. The District argued that Doe failed to state facts sufficient to constitute a cause of action because Assembly Bill No. 218 was invalid under article XVI, section 6 of the California Constitution to the extent it retroactively authorized liability against public entities for previously unenforceable claims.

The trial court initially issued a tentative order overruling the demurrer. However, after a hearing on April 10, 2023, the court ordered the parties to submit supplemental briefing on whether retroactive application of Assembly Bill No. 218 served a public purpose. The court also granted Doe's request for judicial notice of over 50 pages of Assembly Bill No. 218's legislative history.

On June 13, 2023, following a second hearing, the trial court issued an order sustaining the District's demurrer. In its order, the court found that "retrospectively removing a substantive element of [Doe's] causes of action (i.e., the presentation of a Government Code claim at a time such claim was required) violated the California Constitution prohibiting the gift of public

3

funds." (*Sic.*)  The court also found that Assembly Bill No. 218 served no public purpose, "even if a moral or equitable obligation exists."  Thus, judgment of dismissal of Doe's complaint without leave to amend was entered, prompting this timely appeal.

## DISCUSSION

An order sustaining a demurrer is reviewed de novo to determine whether the plaintiff's complaint states a valid cause of action. (*Panterra GP, Inc. v. Superior Court* (2022) 74 Cal.App.5th 697, 729.)  On appeal, we " 'treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' " (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

Having conducted this de novo review, we conclude the trial court erred in finding that Assembly Bill No. 218, by reviving a childhood sexual assault claim previously barred for failure to satisfy a statutory claim presentation requirement, constituted a gift of public funds in violation of article XVI, section 6 of the California Constitution (hereinafter, gift clause).  Adopting the analyses and holdings of this appellate division in *West Contra Costa Unified School Dist. v. Superior Court* (2024) 103 Cal.App.5th 1243, 1259 (*West Contra Costa Unified*),[3] we reject the District's constitutional challenge to Assembly Bill No. 218 on two separate grounds, each of which is discussed *post*.  We begin with the guiding law.

## I.    *The Statutory Framework.*

While public entities are generally immune from tort liability under the Government Claims Act (GCA) (Gov. Code, § 810 et seq.), there is no such immunity when " 'a statute . . . is found declaring them to be liable.' "

---

[3] The California Supreme Court denied the petition for review in *West Contra Costa Unified* on October 30, 2024, S286798.

(*County of Santa Clara v. Superior Court* (2023) 14 Cal.5th 1034, 1045; Gov. Code, § 815.) At the same time, "even when there are statutory grounds for imposing liability, subdivision (b) of [Government Code] section 815 provides that a public entity's liability is 'subject to any immunity of the public entity provided by statute.' (Gov. Code, § 815, subd. (b).)" (*Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 804 (*Quigley*).)

Relevant here, a public entity may be liable for damages suffered as a result of childhood sexual assault (Code Civ. Proc., §§ 340.1, 340.11); however, in order to pursue damages, the sexual assault victim must comply with certain government claim provisions. (*West Contra Costa Unified, supra,* 103 Cal.App.5th at p. 1253; *Williams v. Horvath* (1976) 16 Cal.3d 834, 838 ["Government Code section 815 restores sovereign immunity," and "[this] immunity is waived only if the various requirements of the [GCA] are satisfied"].) In the past, including during the 2007–2008 timeframe in which Doe was allegedly assaulted, these government claim provisions "require[d] that before suing a public entity, a plaintiff must present a claim to the public entity no later than six months after the cause of action accrue[d]. (Gov. Code, § 911.2.)" (*K.J. v. Arcadia Unified School Dist.* (2009) 172 Cal.App.4th 1229, 1233.)

Assembly Bill No. 218 made certain amendments to this statutory framework, two of which are relevant here.

First, the applicable amended version of Code of Civil Procedure section 340.1, former subdivision (q) revived claims "that would otherwise be barred as of January 1, 2020, because the applicable statute of limitation, claim

presentation deadline, or any other time limit had expired."[4] (Code Civ. Proc., § 340.1, former subd. (q); *West Contra Costa Unified, supra*, 103 Cal.App.5th at p. 1254.) Second, newly amended Government Code section 905 exempted all childhood sexual abuse claims made under Code of Civil Procedure section 340.1 from the requirement that a plaintiff present a timely written claim for damages to the public entity before filing a lawsuit against the entity, whereas previously the statute only exempted claims arising out of conduct occurring on or after January 1, 2009. (Gov. Code, § 905, subds. (m), (p); *West Contra Costa Unified, supra*, at p. 1254.) Traditionally, this claim presentation requirement was considered a way to provide greater protections to public entity defendants " ' "because, unlike nonpublic entity defendants, public entities whose acts or omissions are alleged to have caused harm will incur costs that ultimately must be borne by the taxpayers." ' " (*West Contra Costa Unified, supra*, at p. 1255.)

Thus, while the District was immune from liability for Doe's sexual assault claims in 2008 or 2009 due to Doe's failure to comply with the GCA's claim presentation requirements, Doe's claims were revived on January 1, 2020, when Assembly Bill No. 218 went into effect. (See *Shirk v. Vista Unified School Dist*. (2007) 42 Cal.4th 201, 207, 209 (*Shirk*) [under Gov. Code, § 911.2, a personal injury claim must be presented to the

---

[4] As explained in *West Contra Costa Unified, supra*, "[e]ffective January 1, 2024, the Legislature enacted section 340.11, which now governs claims for childhood sexual assault that occurred before January 1, 2024. (Stats. 2023, ch. 877, § 1, eff. Jan. 1, 2024.) The revival provision at issue in the present case is currently located in section 340.11, subdivision (q). The current version of section 340.1 applies to any claim in which the childhood sexual assault occurred on or after January 1, 2024. (§ 340.1, subd. (p).) Nevertheless, the discussion of section 340.1 in the caselaw is also relevant to section 340.11." (103 Cal.App.5th at p. 1253, fn. 4.)

government entity no later than six months after the cause of action accrued; the injured person could thereafter sue the government entity in tort "[o]nly after the public entity's board has acted upon or is deemed to have rejected [his or her] claim"]; see also *Rubenstein v. Doe No. 1* (2017) 3 Cal.5th 903, 914–915 [explaining the Legislature enacted former Gov. Code, § 905, subd. (m), in 2008 "[i]n direct response to *Shirk*" to provide exceptions to the government claims requirement, including for childhood sexual abuse claims arising out of conduct occurring on or after Jan. 1, 2009].)

## II.  *Assembly Bill No. 218 does not bestow a gift of public funds to childhood sexual assault victims.*

The District argues, and the trial court agreed, that Assembly Bill No. 218's retroactive waiver of the GCA's claim presentation requirement for childhood sexual assault claims against public entities arising prior to 2009 constitutes a gift of public funds to victims in violation of the gift clause (Cal. Const., art. XVI, § 6).  In *West Contra Costa Unified*, we unequivocally rejected this argument.  (*West Contra Costa Unified, supra*, 103 Cal.App.5th at p. 1257.)  Standing by our prior decision, we do the same here.[5]

The gift clause provides in relevant part:  "The Legislature shall have no power . . . to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever . . . ."  (Cal. Const., art. XVI, § 6, 1st par.)  "The word 'gift' as used in the gift clause is not limited to transfers of personal property, ' "but includes all appropriations of public money for which there is no authority or enforceable claim," ' or which are grounded on mere moral or

---

[5] In the name of judicial efficiency, we highlight the key points from our prior decision in *West Contra Costa Unified* without wholly rehashing our analysis.

equitable obligations." (*West Contra Costa Unified, supra*, 103 Cal.App.5th at p. 1256.)

As stated in *West Contra Costa Unified*, the California Supreme Court decision of *Chapman v. State* (1894) 104 Cal. 690 (*Chapman*) is "the appropriate lens through which to evaluate the District's gift clause claim." (*West Contra Costa Unified, supra*, 103 Cal.App.5th at p. 1257.)

"As we understand *Chapman*, the gift clause is violated when conduct that was *not* tortious when it took place is subsequently made tortious with retroactive effect. But the GCA itself and the *Quigley*, *Shirk*, and *Rubenstein* decisions make clear that the District's substantive liability for the alleged sexual assaults exists independently of the claim presentation requirement. Thus, we conclude that no 'gift' occurred when the Legislature waived the claim presentation requirement with respect to alleged conduct for which the District was indisputably substantively liable when it happened." (*West Contra Costa Unified, supra*, 103 Cal.App.5th at p. 1264, fn. omitted.)

"[C]ritically, the *Chapman* decision not only concluded there is no gift clause violation if liability existed when the alleged misconduct occurred, but the decision *also* did *not* view satisfaction of the claim presentation requirement as an aspect of the relevant underlying liability. Instead, 'the liability of the state accrued at the time of its [contractual] breach.' ([*Chapman, supra*, 104 Cal.] at p. 696.) As explained below, this liability has been referred to as the state's 'substantive liability.' (*Quigley, supra*, 7 Cal.5th at p. 813.)" (*West Contra Costa Unified, supra*, 103 Cal.App.5th at p. 1259, 1st bracketed insertion added.)

Likewise, "[u]nder the GCA, the claims presentation requirement is not part of the District's substantive liability, so retroactive waiver of the requirement does not 'create any liability or cause of action against the state

where none existed before.'  (*Chapman, supra*, 104 Cal. at p. 696.)"  (*West Contra Costa Unified, supra*, 103 Cal.App.5th at pp. 1259–1260.) "Government Code section 905.8 states, 'Nothing in this part imposes liability upon a public entity unless such liability otherwise exists.'  The associated California Law Revision Commission comment explains that this section 'makes clear that the claims presentation provisions do not impose substantive liability; some other statute must be found that imposes liability.' (4 Cal. Law Revision Com. Rep. (1963) p. 1028; [citation] ['it is proper to look to comments by the Commission, which are persuasive evidence of the intent of the Legislature in enacting the Commission's recommendations'].)  Thus the question of the District's 'substantive liability' is determined by reference to statutes *outside* the claim presentation requirement.  At the time of the alleged sexual misconduct (and today), Government Code section 820, subdivision (a) provided that 'a public employee is liable for injury caused by his act or omission to the same extent as a private person,' and Government Code section 815.2, subdivision (a) provided that '[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.'  [Citations.]  The District does not dispute that those statutes impose liability for the type of conduct alleged in the present case."  (*West Contra Costa Unified, supra*, at p. 1260, fn. omitted.) "Accordingly, the GCA itself makes clear that the District's substantive liability existed when the alleged wrongful conduct occurred; timely presentation of a claim was a condition to waiver of government immunity, but it was not necessary to render the underlying conduct tortious.  Because a statute imposing liability on the District existed at the time of the sexual

9

assaults, Assembly Bill 218 imposes no new substantive liability under *Chapman*'s gift clause analysis." (*Id.* at p. 1261.)

This analysis applies squarely to our case. No basis exists to distinguish it.[6] Accordingly, following the holding of *West Contra Costa Unified*, we conclude the trial court erred in finding that Assembly Bill No. 218 improperly effectuated a gift of public funds.

## III.   *Assembly Bill No. 218 serves a public purpose.*

Further, even if we concluded Assembly Bill No. 218's retroactive waiver of the claim presentation requirement for claims arising prior to 2009 constituted a gift of public funds (we do not), the District's challenge would still fail because any appropriation of public funds effectuated by this bill would serve a public purpose. (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 745–746 (*Carleson*) [an expenditure of public funds that serves a public purpose does *not* violate the gift clause]; *West Contra Costa Unified, supra*, 103 Cal.App.5th at p. 1265 [same].)

"[A] public purpose embodies not only expenditures which are necessary for the continued existence of government, but also those 'which may tend to make that government subserve the general well-being of society, and advance the present and prospective happiness and prosperity to

---

    6 The District's authorities (*Heron v. Riley* (1930) 209 Cal. 507; *Conlin v. Board of Supervisors* (1893) 99 Cal. 17) are fully consistent with our holding. (See *Heron*, at p. 517 [" 'The legislature has not attempted to create a liability against the state for any past acts of negligence on the part of its officers, agents or employees—something it could not do, and the doing of which would, in effect, be the making of a gift' "]; *Conlin*, at p. 22 [" 'A legislative appropriation made to an individual in payment of a claim for damages on account of personal injuries sustained by him while in its service, and *for which the state is not responsible, either upon general principles of law, or by reason of some previous statute creating such liability*, is a gift within the meaning of the constitution' " (italics added)].)

the people.' " (*County of San Diego v. Hammond* (1936) 6 Cal.2d 709, 722.)

" 'The determination of what constitutes a public purpose is primarily a

matter for the Legislature, and its discretion will not be disturbed by the

courts so long as that determination has a reasonable basis.' (*County of*

*Alameda v. Carleson*[*, supra,*] 5 Cal.3d [at p.] 746 [citations].)" (*West Contra*

*Costa Unified, supra*, 103 Cal.App.5th at p. 1257.)

In *West Contra Costa Unified*, we reviewed the legislative history of

Assembly Bill No. 218, as well as a long list of California Supreme Court and

appellate court cases, before deciding Assembly Bill No. 218 indeed serves a

valid public purpose by aiding the "disadvantaged group of childhood sex

assault victims."[7] (*West Contra Costa Unified, supra*, 103 Cal.App.5th at pp.

1265–1269.) In fact, "in seeking to aid victims of childhood sexual assault,

the public purpose underlying Assembly Bill 218 is not fundamentally

---

[7] As *West Contra Costa Unified* notes: "Employing such a 'general
public welfare' rationale, a 'wide variety of welfare and other social programs
have been upheld against constitutional challenge' under the gift clause.
(*Carleson, supra*, 5 Cal.3d at p. 746; see also *County of Alameda v. Janssen*
(1940) 16 Cal.2d 276, 282 [106 P.2d 11] ['This court has frequently upheld the
expenditure of funds by the state or its subdivisions for the benefit of
individuals as for a "public purpose." '].) *Carleson* involved the state's 'plan
for aid and services to needy families with children' (*Carleson*, at p. 734), and
*Janssen* involved 'the release of liens held against the property of indigent
recipients of aid' (*Janssen*, at p. 282). (See also, e.g., [*California Housing*
*Finance Agency v.*] *Elliott* [(1976)] 17 Cal.3d [575,] 583–584 ['There is
considerable case law supporting the Agency's contention that the
Legislature acted reasonably in concluding that decent housing for the
affected persons serves a public purpose.']; [*County of Los Angeles v.*]
*La Fuente* [(1942)] 20 Cal.2d [870,] 877 ['The care and relief of aged persons
who are in need clearly may be a special matter of state concern in promoting
public health and welfare.']; *San Francisco v. Collins* (1932) 216 Cal. 187, 190
[13 P.2d 912] [approving bonds for 'the relief of [the City's] indigent sick and
dependent poor'].)" (*West Contra Costa Unified, supra*, 103 Cal.App.5th at
pp. 1267–1268.)

different from the public purpose involved in any of a number of other enactments providing assistance to other disadvantaged classes of persons 'in the best interests of the general public welfare.' (*Carleson, supra*, 5 Cal.3d at p. 746.) The main difference is the mechanism of expenditure of the public funds: many programs provide direct or indirect subsidies from the public treasury, while Assembly Bill 218 ensures any public expenditures will be made by entities accountable for the victims' injuries." (*West Contra Costa Unified, supra*, 103 Cal.App.5th at p. 1269.)

The District circumvents this public purpose by emphatically arguing Assembly Bill No. 218 will force school districts to pay huge amounts to private litigants and their attorneys, leading to less money to hire and train teachers and less money to adopt security measures and implement practices to protect school communities. According to the District, the end result will be lower performing and less safe schools.

The District raises policy issues which we decline to consider. As we explained in *West Contra Costa Unified*, while the District's concerns are valid, the legislative history confirms the Legislature weighed these and other concerns in enacting Assembly Bill No. 218. For example, the Senate Committee on Judiciary, in considering Assembly Bill No. 218, discussed that " '[a] coalition of groups, including the Schools Excess Liability Fund, the Schools Insurance Authority, the Association of California School Administrators, the California Association of Joint Powers Authorities, and the California Association of School Business Officials, [wrote] in opposition [to the bill]: [¶] "As drafted, AB 218 exposes local public schools and others, to claims of abuse going back 40 years ago and longer. It will be impossible for employers to effectively defend against these claims when evidence is likely gone, witnesses have moved or passed away, and there has been a turnover of

staff.  With these barriers, schools will be unable to adequately respond to these claims.  *This failure will result in diversion of funding intended to educate students and serve communities to financing increased legal costs, whether or not the claim is valid.*  This is particularly troubling when considering that AB 218 would permit the recovery of treble damages . . . .” ’ ” (*West Contra Costa Unified, supra*, 103 Cal.App.5th at pp. 1270–1271, citing Sen. Com. on Judiciary, Analysis of Assem. Bill No. 218 (2019–2020 Reg. Sess.) as amended Mar. 25, 2019, p. 12, 3d bracketed insertion and italics added.)

While we may not know “the full scope of the information provided to legislators in opposition to Assembly Bill 218,” our review of the legislative record nonetheless confirmed that “opponents had both an opportunity and [an] incentive to make their arguments to the Legislature.” (*West Contra Costa Unified, supra*, 103 Cal.App.5th at p. 1272.)  Under those circumstances, we declined to second-guess the Legislature’s decisionmaking. (*Ibid.*)

We reach the same conclusion here:  “ ‘ “Courts do not sit as super-legislatures to determine the wisdom, desirability or propriety of statutes enacted by the Legislature.’ [Citation.]  ‘In reviewing the constitutionality of legislation, it must be remembered that “[c]ourts have nothing to do with the wisdom of laws . . . , and the legislative power must be upheld unless manifestly abused so as to infringe on constitutional guaranties. . . .  The only function of the courts is to determine whether the exercise of legislative

13

power has exceeded constitutional limitations.' " ' [Citations.]" (*West Contra Costa Unified, supra,* 103 Cal.App.5th at p. 1272.)[8]

Thus, because Assembly Bill No. 218 does not effectuate a gift of public funds and serves a public purpose,[9] we conclude the trial court erred in sustaining the District's demurrer to Doe's complaint.[10]

**DISPOSITION**

The judgment of dismissal is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

Jackson, P. J.

WE CONCUR:

Simons, J.
Burns, J.

A169013/*Doe v. Acalanes Union High School Dist.*

---

[8] We deny the District's July 16, 2024, request for judicial notice of documents that, according to the District, are "relevant to this appeal . . . to demonstrate Assembly Bill 218—which retroactively authorizes liability against public entities for childhood sexual abuse—has already resulted in awards of public money to private individuals in amounts exceeding $100 million." None of these documents is relevant or helpful to our resolution of the issues raised herein. We also deny the District's request for judicial notice of a document from the 19th century showing "the intent of the framers in adopting the language that would become Article XVI, section 6 of the California Constitution at the California Constitutional Convention held in 1879."

[9] Here, similar to in *West Contra Costa Unified*, the parties debate whether Assembly Bill No. 218 also deters future sexual assaults. As previously stated: "We need not and do not address that issue because we conclude Assembly Bill 218 serves a public purpose regardless of any such deterrence." (*West Contra Costa Unified, supra,* 103 Cal.App.5th at p. 1269, fn. 15.)

[10] We grant Doe's unopposed request for judicial notice, filed April 8, 2024, of eight publicly available documents relating to the legislative history of Assembly Bill No. 218.

14