Filed 9/22/25  Doe v. Mount Diablo Unified School District CA1/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOHN DOE,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>MOUNT DIABLO UNIFIED<br>SCHOOL DISTRICT,<br><br>        Defendant and Respondent. | A169747<br><br>(Contra Costa County<br>Super. Ct. No. C2202544) |

This is an appeal from a judgment in favor of defendant Mount Diablo Unified School District (the District).  Plaintiff John Doe filed a complaint alleging a District teacher sexually abused him in 1972 when he was a teenager and student.  Doe filed his complaint after the Legislature enacted Assembly Bill No. 218 (Stats. 2019, ch. 861, § 1) ("AB 218"), which amended Code of Civil Procedure section 340.1 to revive actions for childhood sexual assault that otherwise would have been barred due to the statute of limitations or the government claim presentation requirement.  AB 218 also amended Government Code section 905[1] to remove the claim presentation requirement for childhood sexual assault claims pursuant to Code of Civil Procedure section 340.1.  The trial court sustained the District's demurrer

---

[1]     All further statutory references are to the Government Code unless otherwise indicated.

after concluding the retroactive waiver of the claim presentation requirement violated the prohibition on gifts of public funds in article XVI, section 6 of the California Constitution ("the gift clause").  On appeal, plaintiff contends this was error.  We agree and so reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe filed his original complaint on November 30, 2022.  In 2023, Doe filed the operative third amended complaint, which alleged, in short, that a teacher employed by the District repeatedly abused him sexually for about one year when he was a 14-year-old student in 1972.  The complaint alleged that the sexual misconduct occurred during school hours, either in a classroom or at the teacher's home; that District employees knew or should have known about the misconduct; and that the teacher at issue had a history of sexually molesting minors.  Doe alleged causes of action for negligence—including negligent supervision, hiring, retention, failure to train, warn and educate—and for violation of civil rights under Civil Code sections 51.7, 52, and 52.1.  Because the alleged sexual abuse occurred in 1972, Doe asserted his action was revived by Code of Civil Procedure section 340.1, subdivision (q) ("section 340.1(q)").  He also contended that section 905, subdivision (m) ("section 905(m)"), as amended by AB 218, eliminated any requirement of a claim presentation before filing suit.

The District demurred to all of Doe's claims, arguing the provisions of AB 218 that purported to retroactively waive the claim presentation requirement and to eliminate the District's governmental immunity violated the constitutional gift clause.  Starting from the premise that the claim presentation requirement was a substantive element of all causes of action against a public entity, the District contended that AB 218's elimination of that requirement imposed a liability where no enforceable claim previously

2

existed. The trial court ultimately agreed with this argument, sustained the demurrer without leave to amend, and entered judgment in the District's favor. Doe filed this appeal.

DISCUSSION

This appeal requires us to determine whether AB 218's retroactive waiver of the claim presentation requirement violates the constitutional gift clause.

As with review of an order sustaining a demurrer, we review the constitutionality of a statute de novo. (*People v. Prado* (2020) 49 Cal.App.5th 480, 484; *Bruni v. The Edward Thomas Hospitality Corp.* (2021) 64 Cal.App.5th 247, 254.) "While we exercise independent judgment, we also begin with a well-established presumption that the Legislature did not violate the Constitution. [Citation.] 'In considering the constitutionality of a legislative act we presume its validity, resolving all doubts in favor of the Act. Unless conflict with a provision of the state or federal Constitution is clear and unquestionable, we must uphold the Act. [Citations.] Thus, wherever possible, we will interpret a statute as consistent with applicable constitutional provisions, seeking to harmonize Constitution and statute.' " (*Prado*, at p. 484.)

### A. Legal Background

#### 1. *The gift clause*

Nested in the first paragraph of article XVI, section 6 of the California Constitution, the gift clause provides that the Legislature has no power " 'to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation.' " (*West Contra Costa Unified School Dist. v. Superior Court* (2024) 103 Cal.App.5th 1243, 1255–1256 (*West Contra Costa Unified*).) For purposes of this clause, a

"gift" includes "all appropriations of public money for which there is no authority or [enforceable] claim, or which rest upon some moral or equitable obligation." (*Conlin v. Board of Supervisors* (1893) 99 Cal. 17, 21–22 (*Conlin*).)

The origin of the gift clause dates back to the Constitutional Convention of 1879. Prior to that point, the Legislature had "passed many acts of relief, in which public moneys were appropriated to individuals whose claims rested entirely upon some moral obligation which could not in every instance be formulated in convincing or satisfactory terms." (*Conlin*, *supra*, 99 Cal. at p. 21.) As an early California Supreme Court decision explained, the constitutional gift clause was intended to restrict such legislative appropriations and must be respected when the Legislature enacts laws. (See *ibid*.) In the words of the court, the gift clause "is not to receive a strict and narrow interpretation, but its spirit as well as its language is to be followed [citation]; and in determining whether a statute is in violation thereof, all the provisions of the statute, as well as those matters of which the court can take judicial knowledge, must be considered." (*Ibid*.)

In *Chapman v. State* (1894) 104 Cal. 690 (*Chapman*), the Supreme Court explained the contours of the gift clause. There, the defendant State of California received 130 tons of coal belonging to the plaintiff's assignors "in consideration of wharfage and dockage charges" for use of the state's wharf. Due to the state's alleged negligence, the wharf collapsed in 1891 and all of the coal was lost in the San Francisco Bay. (*Chapman*, at p. 692.) The plaintiff filed a claim with the state board of examiners, which was rejected. (*Ibid*.) The plaintiff subsequently filed a lawsuit pursuant to a February 28, 1893 law authorizing suits against the state: " 'All persons who have, or shall hereafter have, claims on contract or for negligence against the state, not

4

allowed by the state board of examiners, are hereby authorized, on the terms and conditions herein contained, to bring suit thereon against the state in any of the courts of this state of competent jurisdiction, and prosecute the same to final judgment.' " (*Id.* at p. 693.) After the trial court sustained a demurrer, the Supreme Court reversed. (*Id.* at pp. 691, 697.)

As *Chapman* observed, the gift clause deprived the Legislature of any "power to *create* a liability against the state for any such past act of negligence upon the part of its officers" and, "in the absence of a statute voluntarily assuming such liability, the state is not liable in damages for the negligent acts of its officers while engaged in discharging ordinary official duties pertaining to the administration of the government of the state." (*Chapman*, *supra*, 104 Cal. at p. 693.) Importantly, however, the court observed the plaintiff's action was not for the recovery of damages arising out of negligence, but instead was an action for breach of contract damages in which the state was bound "to the same extent as a private person engaged in conducting the business of a wharfinger would be under a similar contract." (*Id.* at p. 694.)

In holding the February 28, 1893 law did not violate the gift clause, *Chapman* explained: "We are entirely satisfied that *plaintiff's cause of action, as alleged in the complaint, arises upon contract, and that the liability of the state accrued at the time of its breach*; that is, when the coal was lost through the negligence of the officers in charge of the state's wharf, *although there was then no law giving to the plaintiff's assignors the right to sue the state therefor*. At that time the only remedy given the citizen to enforce the contract liabilities of the state, was to present the claim arising thereon to the state board of examiners for allowance, or to appeal to the legislature for an appropriation to pay the same; but *the right to sue the state has since been*

5

*given by the act of February 28, 1893, and in so far as that act gives the right to sue the state upon its contracts, the legislature did not create any liability or cause of action against the state where none existed before. The state was always liable upon its contracts*, and the act just referred to merely gave an additional remedy for the enforcement of such liability, and it is not, even as applied to prior contracts, in conflict with any provision of the constitution." (*Chapman, supra*, 104 Cal. at p. 696, italics added.)

### 2. *AB 218's Changes to The Claim Presentation Requirement and Code of Civil Procedure section 340.1*

The Government Claims Act ("GCA") represents "a comprehensive statutory scheme governing the liabilities and immunities of public entities and public employees for torts." (*Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 803 (*Quigley*).) Prior to the GCA's enactment in 1963, "tort liability for public entity defendants was barred by a common law rule of governmental immunity." (*Ibid*.) Now, "section 815 sets forth the general rule of immunity for public entities under the [GCA]," providing that a public entity is not liable for an injury " '[e]xcept as otherwise provided by statute.' " (*County of Santa Clara v. Superior Court* (2023) 14 Cal.5th 1034, 1045; § 815, subd. (a).) But even when there are statutory grounds for imposing liability, a government entity's potential liability is "subject to any immunity of the public entity provided by statute." (§ 815, subd. (b).)

"The government claims statutes (Gov. Code, § 900 et seq.) require that before suing a public entity, a plaintiff must present a claim to the public entity no later than six months after the cause of action accrues. (§ 911.2.)" (*K.J. v. Arcadia Unified School Dist.* (2009) 172 Cal.App.4th 1229, 1233 (*K.J.*), fn. omitted.) "In [1972], a claim relating to a cause of action for 'injury to person' had to be presented to a government entity 'not later than the 100th day after the accrual of the cause of action.' (Gov. Code, § 911.2, added

6

by Stats. 1963, ch. 1715, § 1, p. 3376.)" (*Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 208 (*Shirk*), superseded by statute on other grounds as stated in *Rubenstein v. Doe No. 1* (2017) 3 Cal.5th 903, 914 (*Rubenstein*).)

The claim presentation requirement serves important public policy purposes: " ' "Requiring a person allegedly harmed by a public entity to first present a claim to the entity, before seeking redress in court, affords the entity an opportunity to promptly remedy the condition giving rise to the injury, thus minimizing the risk of similar harm to others. [Citations.] The requisite timely claim presentation before commencing a lawsuit also permits the public entity to investigate while tangible evidence is still available, memories are fresh, and witnesses can be located. [Citations.] Fresh notice of a claim permits early assessment by the public entity, allows its governing board to settle meritorious disputes without incurring the added cost of litigation, and gives it time to engage in appropriate budgetary planning. [Citations.] The notice requirement under the government claims statute thus is based on a recognition of the special status of public entities, according them greater protections than nonpublic entity defendants, because unlike nonpublic defendants, public entities whose acts or omissions are alleged to have caused harm will incur costs that must ultimately be borne by the taxpayers." ' " (*West Contra Costa Unified*, *supra*, 103 Cal.App.5th at p. 1255.)

It has been said that "[t]imely claim presentation is not merely a procedural requirement, but rather, a condition precedent to a plaintiff's maintaining an action against a defendant, and thus, an element of the plaintiff's cause of action. [Citation.] A complaint which fails to allege facts demonstrating either that a claim was timely presented or that compliance with the claims statute is excused is subject to a general demurrer for failure

to state facts sufficient to constitute a cause of action." (*K.J.*, *supra*, 172 Cal.App.4th at p. 1238.)

Section 905, however, exempts various claims against public entities from the claim presentation requirement. In the years preceding 2009, claims against public entities for damages for childhood sexual assault pursuant to Code of Civil Procedure section 340.1 were not exempt from the requirement. (E.g., Stats. 2007, ch. 130, § 105.) Effective January 1, 2009, the Legislature added subdivision (m) to section 905, which waived the claim presentation requirement for "[c]laims made pursuant to Section 340.1 of the Code of Civil Procedure for the recovery of damages suffered as a result of childhood sexual abuse." (Former section 905(m), added by Stats. 2008, ch. 383, § 1, later amended by Stats. 2019, ch. 861, § 3.) This former version of section 905(m) was prospective and applied "only to claims arising out of conduct occurring on or after January 1, 2009." (Stats. 2008, ch. 383, § 1.)

This remained the state of the law until AB 218. Effective January 1, 2020, AB 218 removed the statute's prospective-only application. (§ 905(m), as amended by Stats. 2019, ch. 861, § 3.) AB 218 also added subdivision (p) to section 905, which provides: "The changes made to this section by the act that added this subdivision are retroactive and apply to any action commenced on or after the date of enactment of that act, and to any action filed before the date of enactment and still pending on that date, including any action or causes of action that would have been barred by the laws in effect before the date of enactment."

AB 218 additionally amended Code of Civil Procedure section 340.1, which essentially functions as an extended "statute of limitations" intended " 'to expand the ability of victims of childhood sexual abuse to hold to account individuals and entities responsible for their injuries.' " (*Los Angeles Unified*

8

*School Dist. v. Superior Court* (2023) 14 Cal.5th 758, 777.) This particular amendment provides a limited revival window for lapsed claims: "Notwithstanding any other provision of law, any claim for damages described in paragraphs (1) through (3), inclusive, of subdivision (a) that has not been litigated to finality and that would otherwise be barred as of January 1, 2020, because the applicable *statute of limitations*, *claim presentation deadline*, or any other time limit had expired, is revived, and these claims may be commenced within three years of January 1, 2020." (Former Code Civ. Proc., § 340.1, subd. (q), as amended by Stats. 2019, ch. 861, § 1, italics added.)

### B. Analysis

The District argues, and the trial court agreed, that AB 218's retroactive waiver of the claim presentation requirement for sexual abuse claims violates the gift clause because it created a liability for an unenforceable claim. This precise argument was recently rejected in a case involving sexual abuse claims against a different school district by Division Five of this court in *West Contra Costa Unified*, *supra*, 103 Cal.App.5th 1243, and then again by Division One of the Second District in *O.B. v. Los Angeles Unified School District* (July 31, 2025, B339555) ___ Cal.App.5th ___ (2025 Cal. App. Lexis 540) (*O.B.*). We will focus on *West Contra Costa Unified*, which after a thorough analysis of the gift clause and AB 218, ultimately concluded the waiver of the claim presentation requirement did not violate the gift clause because it "did not create new 'substantive liability.' " (*West Contra Costa Unified*, at p. 1257.)

*West Contra Costa Unified* identified *Chapman*, *supra*, 104 Cal. 690 as "the appropriate lens" for evaluating the gift clause claim. (*West Contra Costa Unified*, *supra*, 103 Cal.App.5th at p. 1257; see part A.1, *ante*.) As *West*

9

*Contra Costa Unified* explained, "the crucial consideration" under *Chapman* is "whether the Legislature has created new substantive liability." (*West Contra Costa Unified*, at p. 1263.) If such is the case, then the enactment violates the gift clause. (*Id.* at p. 1264.) Conversely, if the legislative enactment "has simply removed an obstacle to recovery imposed by the state as a condition of its consent to suit that is not an aspect of the underlying substantive liability," the gift clause is not violated. (*West Contra Costa Unified*, at pp. 1257, 1263–1264.) *West Contra Costa Unified* found it critical that *Chapman* did not view satisfaction of the board of examiners presentation requirement "as an aspect of the relevant underlying liability," and that instead, the state's substantive liability had accrued when it breached its contractual duty "to exercise ordinary care in preserving the property entrusted to it." (See *West Contra Costa Unified*, at pp. 1258–1259.)

Finding that the board of examiners presentation requirement in *Chapman* was "perfectly analogous" to the GCA claim presentation requirement, *West Contra Costa Unified* concluded the GCA requirement was not part of the defendant school district's "substantive liability." (*West Contra Costa Unified*, *supra*, 103 Cal.App.5th at pp. 1259–1260.) Consequently, the court concluded retroactive waiver of the requirement "does not 'create any liability or cause of action against the state where none existed before.' " (*Id.* at pp. 1259–1260.) As *West Contra Costa Unified* also emphasized, not only does section 905.8 of the GCA specify that " '[n]othing in this part imposes liability upon a public entity unless such liability otherwise exists,' " but the California Law Revision Commission comment associated with the statute makes " 'clear that the claims presentation provisions do not impose substantive liability.' " (*West Contra Costa Unified*, at p. 1260.) Thus, a school district's substantive liability for an employee's

sexual abuse was not created by AB 218 but was already accounted for in other statutes providing that a public employee is liable for injury caused by his or her act or omission (§ 820, subd. (a)) and that a public entity is vicariously liable for the act or omission of its employee within the scope of employment (§ 815.2, subd. (a)). (*West Contra Costa Unified*, at p. 1260; *O.B., supra*, ___ Cal.App.5th at p. ___ [2025 Cal. App. Lexis 540, at pp. *12–*13]; see *C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 865 [school district may be found vicariously liable for the negligence of supervisory or administrative personnel who knew or should have known of an employee's propensities for sexual harassment and nevertheless hired, retained, and inadequately supervised the employee].)

Beyond the GCA statutes, the *West Contra Costa Unified* court found instructive the Supreme Court's analysis in *Quigley, supra,* 7 Cal.5th at page 798, which "emphasized the distinction between the state's 'substantive liability' for alleged wrongdoing and the state's 'consent to suit' " and made clear that "the claim presentation requirement is a condition on the state's consent to suit, and not an aspect of the state's substantive liability." (*West Contra Costa Unified, supra*, 103 Cal.App.5th at p. 1261.)

Thus, *West Contra Costa Unified* concluded, "the GCA itself makes clear that the District's substantive liability existed when the alleged wrongful conduct occurred; timely presentation of a claim was a condition to waiver of government immunity, but it was not necessary to render the underlying conduct tortious. Because a statute imposing liability on the District existed at the time of the sexual assaults, [AB 218] imposes no new substantive liability under *Chapman's* gift clause analysis." (*West Contra Costa Unified, supra*, 103 Cal.App.5th at p. 1261.)

11

We find the reasoning in *West Contra Costa Unified* sound and adopt it as our own.  (See also *O.B.*, *supra*, ___ Cal.App.5th at pp. ___ [2025 Cal. App. Lexis 540, at pp. *7–*16].)  We now turn to the District's arguments.

In urging a contrary outcome, the District attempts to distinguish *Chapman* as involving a breach of contract, for which the state was not immune from suit at the time of the incident.  In the District's view, the act of February 28, 1893 did not offend the gift clause because, unlike the situation here, it did not involve "a retr[o]active revival of a previously unenforceable negligence claim."  But the District fails to acknowledge that *Chapman* found no gift clause violation even though the law authorizing suit against the state for breach of contract was passed *after* the coal incident occurred.  (*Chapman*, *supra*, 104 Cal. at p. 696.)  Prior to the 1893 law providing the right to sue the state upon its contracts, "the only remedy given the citizen to enforce the contract liabilities of the state, was to present the claim arising thereon to the state board of examiners for allowance, or to appeal to the legislature for an appropriation to pay the same." (*Ibid.*)  Likewise, the District hardly mentions, much less grapples with, the GCA statutes plainly establishing that:  (1) public entities have been substantively liable for the torts of their employees since 1963 (§§ 820, subd. (a), 815, subd. (a)); and (2) the claim presentation requirement is not part of the state's substantive liability (§ 905.8; Cal. Law Revision Com. com., foll. § 905.8.).

The District also relies on *Shirk*, *supra*, 42 Cal.4th 201, *State of California v. Superior Court* (*Bodde*) (2004) 32 Cal.4th 1234, and *Williams v. Horvath* (1976) 16 Cal.3d 834 for their language describing timely claim presentation as an "element" of a cause of action and a condition precedent to, or "substantive limitation" on, suits against public entities.  But these cases do not address the gift clause or the GCA statutes discussed above, and

12

the District otherwise fails to address the language in these authorities acknowledging that "[g]enerally, a cause of action for childhood sexual molestation accrues at the time of molestation." (*Shirk, supra,* 42 Cal.4th at p. 210; see *Rubenstein, supra,* 3 Cal.5th at p. 913 ["cause of action had accrued in the ripeness sense at the latest in 1994, the time of the last alleged molestation"].) And as the courts in *O.B.* and *West Contra Costa Unified* concluded, the District's other authorities—i.e., *Heron v. Riley* (1930) 209 Cal. 507; *Powell v. Phelan* (1903) 138 Cal. 271; *Bourn v. Hart* (1892) 93 Cal. 321; *Conlin, supra,* 99 Cal. 17—likewise do not call for a different result. (See *O.B., supra,* ___ Cal.App.5th at p. ___, fn. 7 [2025 Cal. App. Lexis 540, at p. *16, fn. 7]; *West Contra Costa Unified, supra,* 103 Cal.App.5th at p. 1258, fn. 8.)

The District further contends, though not under a proper argument heading (*Winslett v. 1811 27th Avenue, LLC* (2018) 26 Cal.App.5th 239, 248, fn. 6), that *West Contra Costa Unified* is somehow deficient because it failed to discuss the history that led to enactment of the gift clause at the Constitutional Convention of 1879. But for the reasons already discussed, the District's alternative analysis of the history and underlying purpose of the gift clause does not persuade us to reject the reasoning in *West Contra Costa Unified.*[2]

In closing, we note the District criticizes the wisdom of AB 218's retroactive waiver of the claim presentation requirement given its significant

---

[2] On this topic, the District requests that we take judicial notice of a newspaper article and excerpts from the debates around the Constitutional Convention of 1879, at the time the gift clause was ratified. We deny the request for judicial notice, as these materials are not necessary for determining the issues on appeal. (*Hughes Electronics Corp. v. Citibank Delaware* (2004) 120 Cal.App.4th 251, 266, fn. 13)

fiscal impact and consequences on school districts and their ability to educate and protect children. We are not indifferent to these concerns, but these are policy issues that fall squarely within the Legislature's purview, and the legislative history indicates the Legislature did in fact consider and weigh these and other concerns. (*West Contra Costa Unified*, *supra*, 103 Cal.App.5th at pp. 1270–1271.) It is not the role of the courts to " ' "sit as super-legislatures to determine the wisdom, desirability or propriety of statutes enacted by the Legislature," ' " and our only function is " ' " 'to determine whether the exercise of legislative power has exceeded constitutional limitations.' " ' " (*West Contra Costa Unified*, at p. 1272.) The District should take its concerns to the Legislature, which is best equipped to consider whether or to what extent a legislative change might be called for given the current circumstances identified by the District.[3]

---

[3] The District requests that we take judicial notice of an order by the Second Appellate District, Division Six, summarily denying a petition for writ of mandate or prohibition. That order includes a dissent authored by Justice Yegan criticizing *West Contra Costa Unified* for (1) failing to "adequately discuss" whether elimination of the claim presentation requirement by AB 218 served a public purpose; and (2) failing to address the serious due process concerns raised by the retroactive elimination of sovereign immunity. Justice Yegan focused on the fiscal impact of the AB 218's elimination of the claim presentation requirement, and also the fact that stale sexual molestation cases would be difficult, or perhaps impossible, to defend against.

Justice Yegan, however, did not address in any detail the substance of the public purpose analysis in *West Contra Costa Unified*. Moreover, the order has no precedential value (*Kowis v. Howard* (1992) 3 Cal.4th 888, 894), and his discussion regarding fiscal impact and the ability of public entities to defend against old claims raises largely legislative considerations. Accordingly, we decline to take judicial notice of the order.

For similar reasons, we also decline the District's request that we take judicial notice of verdicts in recent childhood sexual assault cases. The District asserts these verdicts are relevant to show that AB 218's waiver of the claim presentation requirement has resulted in public entity liability in aid of private individuals, and to show the size of monetary awards being

14

## DISPOSITION

The judgment of dismissal is reversed, and the matter is remanded to the superior court for further proceedings consistent with this opinion. Doe is entitled to costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

_____
Fujisaki, J.

WE CONCUR:

_____
Tucher, P.J.

_____
Rodríguez, J.

*Doe v. Mount Diablo USD* (A169747)

_____

issued in these types of cases. Again, the fiscal impact of AB 218 is largely a legislative consideration.