Filed 8/18/25; Certified for Publication 9/8/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JOHN DOE R.L., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> MERCED CITY SCHOOL DISTRICT, <br><br> Defendant and Respondent. | F087142 <br><br> (Super. Ct. No. 22CV-04187) <br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Merced County. Brian L. McCabe, Judge.

Boucher, Raymond P. Boucher, Amanda J.G. Walbrun, Seena R. Paul; Esner, Chang, Boyer & Murphy, Holly N. Boyer, Kevin K. Nguyen, and Kiran R. Iyer for Plaintiff and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo, Marlon C. Wadlington and Scott D. Danforth for Defendant and Respondent.

Fagen Friedman & Fulfrost, Roy A. Combs, David R. Mishook, Daniel Zerga, Isabella Marra; California School Boards Association, Kristin Lindgren Bruzzone, Ethan Retan, Bode Owoyele, and Dana Scott for California School Boards Association and its Education Legal Alliance as Amicus Curiae on behalf of Defendant and Respondent.

Plaintiff John Doe R.L. (Doe. R.L.) (see Cal. Rules of Court, rule 8.90) appeals from a judgment of dismissal entered September 11, 2023, in favor of defendant Merced City School District (District). In the operative complaint,[1] Doe R.L.—citing Code of Civil Procedure section 340.1—claimed the negligent acts and/or omissions of District and/or District's employees proximately caused childhood sexual assault that resulted in his injuries. In a demurrer, District asserted Doe R.L. failed to comply with the Government Claims Act (Gov. Code, § 810 et seq.), specifically its claim presentation requirement (see *id.*, §§ 905, 911.2, 945.4). The superior court sided with District and sustained the demurrer without leave to amend.

On appeal, Doe R.L. contends the superior court erroneously sustained District's demurrer in light of Assembly Bill No. 218 (2019–2020 Reg. Sess.) (Assembly Bill No. 218) (Stats. 2019, ch. 861, § 1 et seq.), which revives Code of Civil Procedure section 340.1 claims that did not satisfy the Government Claims Act's claim presentation requirement. On the other hand, District argues Assembly Bill No. 218's retroactive waiver of the claim presentation requirement for these claims violates article XVI, section 6 of the California Constitution, more commonly known as the gift clause. (See, e.g., *West Contra Costa Unified School Dist. v. Superior Court* (2024) 103 Cal.App.5th 1243, 1252 (*West Contra Costa*).) The California School Boards Association and its Education Legal Alliance (hereafter identified collectively as CSBA) filed an amicus curiae brief in support of District.[2]

---

[1] Doe R.L. filed his original complaint on December 21, 2022; an amended complaint on February 14, 2023; a second amended complaint on June 9, 2023; and a third amended complaint, i.e., the operative complaint, on July 10, 2023.

[2] "Ordinarily, an amicus curiae must take the case as it finds it and accept the issues tendered by the parties to the appeal." (*In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1154, fn. 7.) "As a general rule, California courts will not consider issues raised for the first time by an amicus curiae." (*Ibid.*; accord, *California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1048–1049, fn. 12.) Here,

For the reasons set forth below, we conclude Assembly Bill No. 218's retroactive waiver of the Government Claims Act's claim presentation requirement for Code of Civil Procedure section 340.1 claims does not violate the gift clause and reverse the judgment of dismissal.

## BACKGROUND[3]

According to the complaint, "[f]rom approximately 1965 to 1969," when Doe R.L. was "merely seven (7) to eleven (11) years old," he "was continuously sexually assaulted by his principal" "throughout his elementary school years." As a result, he "suffered, and continues to suffer, from great pain of mind, body, and shock, severe emotional and psychological stress, post-traumatic stress, lack of trust, acute anxiety, depression, anger, humiliation, shame, suicidal ideation, dissociation, difficulty sustaining intimate relationships and interpersonal skills, extreme isolation, sexual aversion, familial distress, disturbances in perception of self and others, loss of self-esteem, and loss of earnings and earning capacity." The following facts were pleaded:

"13. [Doe R.L.] attended [an elementary school] in [District] as an elementary student from approximately 1964 to 1970.

"14. At this time, [District] employed Perpetrator as the principal of [the elementary school]. In this role, [District] allowed Perpetrator to have regular unsupervised contact with [Doe R.L.] and his minor peers.

"15. Perpetrator used his position to groom, lure, and exploit minor students, like [Doe R.L.], into suffering Perpetrator['s] childhood sexual assaults.

CSBA raises arguments that were neither presented in superior court nor advanced by the parties on appeal. "We will only consider those arguments by amic[us] curiae which are raised by the parties on appeal and address them in conjunction with the parties' arguments." (*Qaadir v. Figueroa* (2021) 67 Cal.App.5th 790, 794, fn. 1.)

[3] "Because this appeal arises from a dismissal following a demurrer, we rely on [the operative] complaint . . . for a summary of the factual background. We accept as true all properly pleaded allegations without concern for proof problems." (*Gordon v. Law Offices of Aguirre & Meyer* (1999) 70 Cal.App.4th 972, 975, fn. 2.)

3.

"16.    Perpetrator bought [Doe R.L.] gifts, including a bike, clothing, and food.  At times, Perpetrator also drove [Doe R.L.] to and from school.

"17.    Perpetrator's preferential treatment of [Doe R.L.] was observed and noted by [the elementary school]'s faculty and students.

"18.    At the approximate age of seven (7) years old, when [Doe R.L.] was in first or second grade, Perpetrator began to sexually assault him at [the elementary school].

"19.    Perpetrator called [Doe R.L.] out of class and to his office. Once inside his office, Perpetrator locked the door and drew the blinds closed.  Perpetrator then pulled down [Doe R.L.]'s pants and fondled [Doe R.L.]'s genitals.  He manually stimulated [Doe R.L.]'s penis.  In addition, Perpetrator forced [Doe R.L.] to manually stimulate Perpetrator to ejaculation.

"20.    Perpetrator then told [Doe R.L.] not to tell anyone about what he had done.

"21.    Perpetrator sexually assault [Doe R.L.] in the same or similar manner on numerous and frequent occasions over the next several years at [the elementary school].

"22.    Perpetrator sexually assault [Doe R.L.] both during and after school.

"23.    Over time, Perpetrator's sexual assaults also escalated and occasionally occurred in the faculty lounge of [the elementary school] or Perpetrator's car.

"24.    In addition, Perpetrator sexually assaulted at least three other minor students at [the elementary school].  These classmates disclosed Perpetrator's abuse to [Doe R.L.] and the students discussed it.

"25.    [Doe R.L.] observed these students similarly being taken out of class to go see Perpetrator in his office.

"26.    The faculty at [the elementary school], and in particular, the secretaries and administrative office staff, also knew or suspected of Perpetrator's sexual assaults of minor students.  [The elementary school] faculty routinely saw Perpetrator remove students from their classes, take them into his office, draw the blinds, lock the door, and remain inside for an

4.

extended period for no known academic or disciplinary purpose." (Fn. omitted.)

Doe R.L. raised four causes of action: (1) negligence; (2) negligent hiring, retention, and supervision of an unfit employee; (3) negligent supervision of a minor; and (4) negligent failure to warn, train, and educate. He maintained he "was not required to present a government tort claim to [District]" because Government Code section 905, subdivision (m)—as amended by Assembly Bill No. 218—"exempts the government tort claim presentation requirements of the Government Tort Claims Act for claims made pursuant to [Code of Civil Procedure section] 340.1 for the recovery of damages suffered as a result of childhood sexual assault."

In a demurrer dated July 21, 2023, District argued Doe R.L.'s causes of action "must be dismissed for failure to comply with the Government Claim requirement of [Government] Code [sections] 911.2 and 945.4." Regarding Assembly Bill No. 218's "significant changes to Government Code section 905," i.e., the amendment of subdivision (m) and the addition of subdivision (p), District insisted they violate the gift clause. District also argued Doe R.L.'s first, third, and fourth causes of action should be dismissed because they were "essentially just a rebranding of the second [cause of action] for Negligent Supervision."

A hearing on the demurrer was held August 21, 2023. Following counsels' arguments, the superior court remarked:

> "The Court notes that the Court concurs with [District]'s position and believes that this is an issue that would have to be resolved at the appellate level.
>
> "The Court is not going to legislate or create law from the bench and believes that the failure to comply with the government claim requirements was fatal in this instance.
>
> "Now if the appellate court says otherwise, then so be it. That's the view of the Court."

5.

On September 11, 2023, the court entered an order sustaining District's demurrer without leave to amend the complaint. The order specified:

> "District[']s Demurrer to [Doe R.L.']s [Operative] Complaint[']s First, Second, Third and Fourth Causes of Action for failure to comply with the Government Claim Requirement of Gov[ernment] Code [sections] 911.2 and 945.4 is SUSTAINED WITHOUT LEAVE TO AMEND. This Court finds that Legislation changing the statute of limitations for an offense did not alter the deadline for filing a claim against a public entity."

## DISCUSSION

### I. Overview of relevant law

#### a. *Code of Civil Procedure section 340.1*

The purpose of Code of Civil Procedure section 340.1 is " 'to expand the ability of victims of childhood sexual abuse to hold to account individuals and entities responsible for their injuries.' [Citation.]" (*Los Angeles Unified School Dist. v. Superior Court* (2023) 14 Cal.5th 758, 777 (*Los Angeles Unified*).) "Since its original enactment in 1986 [citation], the statute has been amended on multiple occasions to extend the filing periods for claims alleging childhood sexual assault and revive otherwise time-barred claims." (*Ibid.*) "One such amendment occurred through the enactment of Assembly Bill No. 218 . . . in 2019." (*Ibid.*) "This revision made several changes to Code of Civil Procedure section 340.1. Among these adjustments, Assembly Bill No. 218 extended the time for filing claims for childhood sexual assault (Code Civ. Proc., § 340.1, subds. (a), (c)) and created a revival window for lapsed claims (*id.*, subd. (q)), which included relief from the claim presentation deadlines within the Government Claims Act." (*Los Angeles Unified*, *supra*, at p. 777.)

Between January 1, 2020, and January 1, 2023, Code of Civil Procedure section 340.1—as amended by Assembly Bill No. 218—read in part:

> "(a) In an action for recovery of damages suffered as a result of childhood sexual assault, the time for commencement of the action shall be within 22 years of the date the plaintiff attains the age of majority or within five

6.

years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by sexual assault, whichever period expires later, for any of the following actions:

"(1) An action against any person for committing an act of childhood sexual assault.

"(2) An action for liability against any person or entity who owed a duty of care to the plaintiff, if a wrongful or negligent act by that person or entity was a legal cause of the childhood sexual assault that resulted in the injury to the plaintiff.

"(3) An action for liability against any person or entity if an intentional act by that person or entity was a legal cause of the childhood sexual assault that resulted in the injury to the plaintiff. [¶] . . . [¶]

"(c) An action described in paragraph (2) or (3) of subdivision (a) shall not be commenced on or after the plaintiff's 40th birthday unless the person or entity knew or had reason to know, or was otherwise on notice, of any misconduct that creates a risk of childhood sexual assault by an employee, volunteer, representative, or agent, or the person or entity failed to take reasonable steps or to implement reasonable safeguards to avoid acts of childhood sexual assault.  For purposes of this subdivision, providing or requiring counseling is not sufficient, in and of itself, to constitute a reasonable step or reasonable safeguard.  Nothing in this subdivision shall be construed to constitute a substantive change in negligence law.

"(d) 'Childhood sexual assault' as used in this section includes any act committed against the plaintiff that occurred when the plaintiff was under the age of 18 years and that would have been proscribed by Section 266j of the Penal Code; Section 285 of the Penal Code; paragraph (1) or (2) of subdivision (b), or of subdivision (c), of Section 286 of the Penal Code; subdivision (a) or (b) of Section 288 of the Penal Code; paragraph (1) or (2) of subdivision (b), or of subdivision (c), of Section 287 or of former Section 288a of the Penal Code; subdivision (h), (i), or (j) of Section 289 of the Penal Code; any sexual contact as defined in paragraph (1) of subdivision (d) of Section 311.4 of the Penal Code; Section 647.6 of the Penal Code; or any prior laws of this state of similar effect at the time the act was committed.  This subdivision does not limit the availability of causes of action permitted under subdivision (a), including causes of action against persons or entities other than the alleged perpetrator of the abuse. [¶] . . . [¶]

7.

"(q) Notwithstanding any other provision of law, any claim for damages described in paragraphs (1) through (3), inclusive, of subdivision (a) that has not been litigated to finality and that would otherwise be barred as of January 1, 2020, because the applicable statute of limitations, claim presentation deadline, or any other time limit had expired, is revived, and these claims may be commenced within three years of January 1, 2020. A plaintiff shall have the later of the three-year time period under this subdivision or the time period under subdivision (a) as amended by the act that added this subdivision.

"(r) The changes made to the time period under subdivision (a) as amended by the act that amended this subdivision in 2019 apply to and revive any action commenced on or after the date of enactment of that act, and to any action filed before the date of enactment, and still pending on that date, including any action or causes of action that would have been barred by the laws in effect before the date of enactment." (Stats. 2019, ch. 861, § 1.)

In 2022, the Legislature enacted Assembly Bill No. 2959 (2021–2022 Reg. Sess.) (Assembly Bill No. 2959) (Stats. 2022, ch. 444, § 1), which added former subdivision (s) to Code of Civil Procedure section 340.1[4] but otherwise retained the preceding statutory language nearly verbatim.[5]

---

[4] "Notwithstanding any other law, including Chapter 1 of Part 3 of Division 3.6 of Title 1 of the Government Code (commencing with Section 900) and Chapter 2 of Part 3 of Division 3.6 of Title 1 of the Government Code (commencing with Section 910), a claim for damages described in paragraphs (1) through (3), inclusive, of subdivision (a), is not required to be presented to any government entity prior to the commencement of an action." (Code of Civ. Proc., § 340.1, former subd. (s).)

[5] After judgment was entered in the instant case but before Doe R.L. filed this appeal, the Legislature enacted Assembly Bill No. 452 (2023–2024 Reg. Sess.) (Assembly Bill No. 452) and Senate Bill No. 558 (2023–2024 Reg. Sess.) (Senate Bill No. 558).

Assembly Bill No. 452 amended Code of Civil Procedure section 340.1. (See Stats. 2023, ch. 655, § 1.) The current statute no longer imposes "time limits for the commencement of actions for the recovery of damages suffered as a result of childhood sexual assault" or "the prohibition on certain actions proceeding on or after the plaintiff's 40th birthday unless specified conditions are met" (Legis. Counsel's Dig., Assem. Bill No. 452 (2023–2024 Reg. Sess.) Stats. 2023, ch. 655), but these revisions only apply to claims "in which the childhood sexual assault occurred on and after January 1, 2024" (Code Civ. Proc., § 340.1, subd. (p)).

b. *Government Claims Act*

"Enacted in 1963, the Government Claims Act . . . is a comprehensive statutory scheme governing the liabilities and immunities of public entities and public employees for torts. [Citation.] For many decades before the Act, tort liability for public entity defendants was barred by a common law rule of governmental immunity. Over time, however, the common law rule became 'riddled with exceptions,' both legislative and judge made, and in 1961 [the California Supreme C]ourt abolished the rule altogether. [Citation.]" (*Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 803 (*Quigley*).) Under the Government Claims Act, "there is no common law tort liability for public entities in California; instead, such liability must be based on statute." (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 897; see Gov. Code, § 815, subd. (a) ["Except as otherwise provided by statute: [¶] . . . A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."]; *Cleveland v. Taft Union High School Dist.* (2022) 76 Cal.App.5th 776, 797–798 ["An important feature of the [Government Claims] Act is that public entity tort liability is *exclusively* statutory . . . ."].) Moreover, "even when there are statutory grounds for imposing liability, subdivision (b) of [Government Code] section 815 provides that a public entity's liability is 'subject to any immunity of the public entity provided by statute,' " including those enumerated in the Government Claims Act itself. (*Quigley, supra*, at p. 804, quoting Gov. Code, § 815, subd. (b).)[6]

Senate Bill No. 558 added Code of Civil Procedure section 340.11 (see Stats. 2023, ch. 877, § 1), which "applies only to those instances of childhood sexual assault that occur before January 1, 2024" (Legis. Counsel's Dig., Sen. Bill No. 558 (2023–2024 Reg. Sess.). This new statute is more or less identical to the pre-January 1, 2024 version of Code of Civil Procedure section 340.1, incorporating the language that was deleted by Assembly Bill No. 452. (See Code Civ. Proc., § 340.11, subds. (a), (c).)

[6] In its demurrer, District did not raise any immunity provision under the Government Claims Act as an affirmative defense. (See *Quigley, supra*, 7 Cal.5th at pp. 802–803, 807, 814–815 [immunities conferred by Government Claims Act are

### i. Statutory provisions imposing vicarious public entity liability for public employees' negligence

"Except as otherwise provided by statute . . . , a public employee is liable for injury caused by his act or omission to the same extent as a private person." (Gov. Code, § 820, subd. (a).) "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would . . . have given rise to a cause of action against that employee or his personal representative." (*Id.*, § 815.2, subd. (a).) "In other words, these statutory provisions establish the general rules that (1) an employee of a public entity is liable for his or her torts to the same extent as a private person and (2) the public entity is vicariously liable for any injury which its employee causes to the same extent as a private employer." (*Cleveland v. Taft Union High School Dist.*, *supra*, 76 Cal.App.5th at p. 798.)

### ii. Claim presentation requirement

Under the Government Claims Act, with some exceptions, " 'all claims for money or damages against local public entities' [must] be presented to the responsible public entity before a lawsuit is filed." (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 734, fn. omitted (*Stockton*), quoting Gov. Code, § 905; see *Artukovich v. Astendorf* (1942) 21 Cal.2d 329, 331 ["[W]here a right of action against the state or any of its political subdivisions is created by statute, such right may be circumscribed by any conditions that the Legislature may see fit to impose . . . ."].) A claim must include "[a] general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim" (Gov. Code, § 910, subd. (d)) and "[t]he name or names of the public employee or employees causing the injury, damage, or loss, if known" (*id.*, subd. (e)), among other things. (See *Stockett v. Association of Cal. Water Agencies Joint Powers Ins. Authority* (2004) 34 Cal.4th 441,

---

affirmative defenses and deemed forfeited if not timely raised in demurrer or answer to complaint].)

446 ["[A] claim need not contain the detail and specificity required of a pleading, but need only 'fairly describe what [the] entity is alleged to have done.' "].)

Before 1988, "[a] claim relating to a cause of action for death or for injury to [a] person or to personal property" needed to be presented "not later than the 100th day after the accrual of the cause of action." (Gov. Code, former § 911.2, added by Stats. 1963, ch. 1715, § 1, pp. 3372–3376; cf. Gov. Code, § 911.2, subd. (a) ["not later than six months after the accrual of the cause of action"].) "Failure to present a timely claim bars suit against the entity." (*Stockton*, *supra*, 42 Cal.4th at p. 734; see Gov. Code, § 945.4 ["[N]o suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of Part 3 of this division until a written claim therefor has been presented to the public entity and has been acted upon by the board,[7] or has been deemed to have been rejected by the board, in accordance with Chapters 1 and 2 of Part 3 of this division."]; *Rubenstein v. Doe No. 1* (2017) 3 Cal.5th 903, 906 (*Rubenstein*) ["Compliance with the claim requirement is a condition precedent to suing the public entity."].)

"[T]he claim[] presentation provisions do not impose substantive liability; some other statute must be found that imposes liability." (Cal. Law Revision Com. com., 32 pt. 2 West's Ann. Gov. Code (2012 ed.) foll. § 905.8, p. 368; accord, *West Contra Costa*, *supra*, 103 Cal.App.5th at p. 1260; see Gov. Code, § 905.8 ["Nothing in this part imposes liability upon a public entity unless such liability otherwise exists."]; *Conservatorship of Wendland* (2001) 26 Cal.4th 519, 542 [" '[E]xplanatory comments by a law revision commission are persuasive evidence of the intent of the Legislature in subsequently enacting its recommendations into law.' "].) Rather, " '[r]equiring a person allegedly

_____

7 " 'Board' means: [¶] . . . In the case of a local public entity, the governing body of the local public entity." (Gov. Code, § 900.2, subd. (a).)

11.

harmed by a public entity to first present a claim to the entity, before seeking redress in court, affords the entity an opportunity to promptly remedy the condition giving rise to the injury, thus minimizing the risk of similar harm to others. [Citations.] The requisite timely claim presentation before commencing a lawsuit also permits the public entity to investigate while tangible evidence is still available, memories are fresh, and witnesses can be located. [Citations.] Fresh notice of a claim permits early assessment by the public entity, allows its governing board to settle meritorious disputes without incurring the added cost of litigation, and gives it time to engage in appropriate budgetary planning. [Citations.] The notice requirement under the government claims statute thus is based on a recognition of the special status of public entities, according them greater protections than nonpublic entity defendants, because unlike nonpublic defendants, public entities whose acts or omissions are alleged to have caused harm will incur costs that must ultimately be borne by the taxpayers.' [Citation.]" (*Rubenstein*, *supra*, 3 Cal.5th at pp. 907–908; accord, *Cavey v. Tualla* (2021) 69 Cal.App.5th 310, 328–329.)

Currently, all claims made pursuant to Code of Civil Procedure section 340.1 are exempt from the claim presentation requirement. (Gov. Code, § 905, subd. (m).) Prior to 2020, Government Code section 905, subdivision (m) provided:

> "Claims made pursuant to Section 340.1 of the Code of Civil Procedure for the recovery of damages suffered as a result of childhood sexual abuse. *This subdivision shall apply only to claims arising out of conduct occurring on or after January 1, 2009.*" (Stats. 2008, ch. 383, § 1, pp. 3002–3003, italics added.)

Subsequently, Assembly Bill No. 218 amended Government Code section 905, subdivision (m) to read:

> "Claims made pursuant to Section 340.1 of the Code of Civil Procedure for the recovery of damages suffered as a result of childhood sexual assault." (Stats. 2019, ch. 861, § 3; see *West Contra Costa*, *supra*, 103 Cal.App.5th at p. 1254 [Gov. Code, § 905, subd. (m) "exempts all claims based on childhood sexual assault from the claim presentation requirement"].)

12.

Assembly Bill No. 218 also added Government Code section 905, subdivision (p), which reads:

> "The changes made to this section by the act that added this subdivision are retroactive and apply to any action commenced on or after the date of enactment of that act, and to any action filed before the date of enactment and still pending on that date, including any action or causes of action that would have been barred by the laws in effect before the date of enactment." (Stats. 2019, ch. 861, § 3.)

c. *Gift clause*

"The Legislature shall have no power . . . to make any gift or authorize the making of any gift, or any public money or thing of value to any individual, municipal or other corporation whatever . . . .' (Cal. Const., art. XVI, § 6; accord, *West Contra Costa*, *supra*, 103 Cal.App.5th at pp. 1255–1256; see *Chapman v. State* (1894) 104 Cal. 690, 693 (*Chapman*), citing Cal. Const., former art. IV, § 31.)  "The gift clause denies 'to the [L]egislature the right to make direct appropriations to individuals from general considerations of charity or gratitude, or because of some supposed moral obligation resting upon the people of the state . . . .  It was because of abuses which had crept into legislation by reason of the unlimited power theretofore exercised by the [L]egislature in determining what individual claims should be recognized by private statute, and to relieve in some degree legislators from the importunities of persons interested in securing such appropriations, that the power of the [L]egislature was thus limited by the present [C]onstitution of this state.' "  (*West Contra Costa*, *supra*, at p. 1256, quoting *Stevenson v. Colgan* (1891) 91 Cal. 649, 651.)

Although the term "gift" is statutorily defined as "a transfer of personal property, made voluntarily, and without consideration" (Civ. Code, § 1146), "the gift the Constitution prohibits is not limited to personal property, 'but includes all appropriations of public money for which there is no authority or enforceable claim, or which perchance may rest upon some moral or equitable obligation' " (*Westly v. U. S. Bancorp* (2003) 114

13.

Cal.App.4th 577, 582, quoting *Allied Architects' Assn. v. Payne* (1923) 192 Cal. 431, 439). Pertinent to the instant case, "providing an opportunity for a plaintiff to assert a claim based on newly created liability [or cause of action] can also constitute a gift." (*West Contra Costa*, *supra*, 103 Cal.App.5th at p. 1258, fn. 8; see *Chapman*, *supra*, 104 Cal. at pp. 693–696.)

### i. *Chapman*

In *Chapman*, the plaintiff brought an action for damages against the state pursuant to a statute approved February 28, 1893 (*Chapman*, *supra*, 104 Cal. at pp. 691, 693), which read in part:

> " 'All persons who have, or shall hereafter have, claims on contract or for negligence against the state, not allowed by the state board of examiners, are hereby authorized, on the terms and conditions herein contained, to bring suit thereon against the state in any of the courts of this state of competent jurisdiction, and prosecute the same to final judgment.' " (*Chapman*, *supra*, 104 Cal. at p. 693.)

The complaint alleged: (1) the state was paid to store approximately 130 tons of coal belonging to the plaintiff's assignors on a public wharf; (2) on August 10, 1891, said wharf collapsed and all the coal sank in the bay; (3) the collapse was the result of " 'the negligence, omission, and carelessness of [the state], its officers, and agents, . . . in failing and neglecting to keep said wharf in good and sound condition and repair' "; and (4) the plaintiff duly presented a claim to the state board of examiners, which was rejected on September 13, 1893. (*Chapman*, *supra*, 104 Cal. at p. 692.) The state filed a demurrer, which was sustained by the superior court. (*Id.* at pp. 691–692.)

The plaintiff argued the February 28, 1893 statute authorized his lawsuit while the Attorney General countered the action could not be maintained because the aforementioned statute did not exist at the time of the August 10, 1891 incident. (*Chapman*, *supra*, 104 Cal. at p. 693.) The Supreme Court concluded the plaintiff's action "cannot be sustained" "as one for the recovery of damages arising out of the

14.

negligence of the officers of the state in the discharge of a strictly governmental duty." (*Id.* at p. 694.) First, the action was "based . . . upon a loss accruing before the enactment of the statute of February 28, 1893 . . . ." (*Id.* at p. 693.) Second, "in the absence of a statute voluntarily assuming . . . liability, the state is not liable in damages for the negligent acts of its officers while engaged in discharging ordinary official duties pertaining to the administration of the government of the state." (*Ibid.*) Finally, in view of the gift clause, "the [L]egislature has no power to *create* a liability against the state for any such past act of negligence upon the part of its officers" via the February 28, 1893 statute. (*Ibid.*, citing Cal. Const., former art. IV, § 31.)

Nevertheless, the Supreme Court reversed the judgment "with directions to overrule the demurrer to the complaint" (*Chapman*, *supra*, 104 Cal. at p. 697), finding the plaintiff's action "is not founded upon negligence constituting a tort, pure and simple and unrelated to any contract, but is substantially an action for damages on account of the alleged breach of a contract" (*id.* at p. 694). The facts alleged in the complaint showed the plaintiff and the state entered into a contract: "in consideration of wharfage paid to it, [the state] received upon one of its public wharves the coal belonging to [the] plaintiff's assignors, and to be delivered to them on such wharf for removal therefrom." (*Ibid.*) Because "[t]he [legal] principle that a state is bound by the same rules as an individual in measuring its liability on a contract" was "well expressed" at that time (*ibid.*), the state was "bound . . . to the same extent as a private person engaged in conducting the business of a wharfinger would be under a similar contract." (*Ibid.*)[8] "[W]hen the coal was lost

---

[8] "A wharfinger is one who for hire receives merchandise on his wharf, either for the purpose of forwarding or for delivery to the consignee on such wharf . . . ." (*Chapman*, *supra*, 104 Cal. at p. 694.) A wharfinger " 'is bound to return or deliver the goods according to his contract' " (*id.* at p. 695) and "impliedly bound by his contract as such to exercise ordinary care for the preservation and safety of property intrusted to him" (*ibid.*). "[T]his imposes upon him the duty to exercise ordinary care to ascertain the condition of his wharf, that he may know whether it is reasonably safe for the purposes for which he hires it; and, if merchandise is received by him upon a wharf which is

15.

through the negligence of the officers in charge of the state's wharf" (*Chapman*, at p. 696), "[t]he [contractual] liability of the state accrued" (*ibid.*).

As to why the February 28, 1893 statute did not create a new liability or cause of action for breach of contract against the state, the high court explained:

> "At th[e] time [of the state's breach] the only remedy given the citizen to enforce the contract liabilities of the state, was to present the claim arising thereon to the state board of examiners for allowance, or to appeal to the [L]egislature for an appropriation to pay the same; but the right to sue the state has since been given by the act of February 28, 1893, and in so far as that act gives the right to sue the state upon its contracts, the [L]egislature did not create any liability or cause of action against the state where none existed before. The state was always liable upon its contracts, and the act just referred to merely gave an additional remedy for the enforcement of such liability, and it is not, even as applied to prior contracts, in conflict with any provision of the [C]onstitution.
>
> " 'The fact that the state is not subject to an action [o]n behalf of a citizen does not establish that he has no claim against the state, or that no liability exists from the state to him. It only shows that he cannot enforce against the state his claim, and make it answer in a court of law for its liability. What is made out by this objection is not that there is no liability and no claim, but that there is no remedy.' [Citation.]" (*Chapman*, *supra*, 104 Cal. at p. 696.)

### ii. Private versus public purpose

"By its terms, article XVI, section 6 of the state Constitution prevents the Legislature from making or authorizing any gift of public funds for private purposes." (*Sturgeon v. County of Los Angeles* (2008) 167 Cal.App.4th 630, 637; see *Conlin v. Board*

---

unsafe, and is thereby lost, so that he cannot deliver it according to his contract, the wharfinger is liable therefor if ordinary care would have enabled him to know the condition of his wharf; and such negligence on his part will be treated as a failure to exercise ordinary care for the safety of the property intrusted to him. This negligence . . . , and the consequent loss of the goods intrusted to him, would be a breach of the terms of his contract, and his liability therefor could have been enforced at common law by an action of *assumpsit* [citation]; and under our practice the owner or consignee may sue upon the contract for the damages sustained by reason of such negligence." (*Ibid.*)

*of Supervisors* (1893) 99 Cal. 17, 22 ["The [L]egislature is to be regarded as holding the public moneys in trust for public purposes, and this limitation of the [C]onstitution is directed against its disposal of these funds except in accordance with such purposes."].) "If the money is for a public purpose, the appropriation is not a gift even though private persons are benefited by the expenditure" (*County of Los Angeles v. La Fuente* (1942) 20 Cal.2d 870, 877) because "the benefit to the state from an expenditure for a public purpose is in the nature of consideration" (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 745–746 (*Carleson*)). (Cf. Civ. Code, § 1146 ["gift" is made "without consideration"].)

## II. Standard of review

"A demurrer tests the legal sufficiency of the complaint. [Citation.] On appeal from a judgment of dismissal following an order sustaining a demurrer, we examine the complaint de novo in order to ascertain 'whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose.' [Citation.] We give the complaint a reasonable interpretation, reading it as a whole and viewing its parts in context. [Citations.] We assume the truth of the properly pleaded factual allegations, facts that can be reasonably inferred from those pleaded, and facts of which judicial notice can be taken. [Citation.] But we do not assume the truth of pleaded contentions and legal conclusions. [Citations.] And we may disregard allegations which are contrary to law or to a fact of which judicial notice may be taken. [Citation.]" (*In re Social Services Payment Cases* (2008) 166 Cal.App.4th 1249, 1263.) On appeal, the plaintiff bears the burden of demonstrating that the superior court erred in sustaining the demurrer. (*Brown v. Crandall* (2011) 198 Cal.App.4th 1, 8; *Vaughn v. LJ Internat., Inc.* (2009) 174 Cal.App.4th 213, 219.)

"We review de novo questions of interpretation and constitutionality of a statute." (*Finberg v. Manset* (2014) 223 Cal.App.4th 529, 532.) " 'In ascertaining the meaning of a statute, we look to the intent of the Legislature as expressed by the actual words of the

17.

statute' [citation], 'giving them a plain and commonsense meaning' [citation]." (*California State University, Fresno Assn., Inc. v. County of Fresno* (2017) 9 Cal.App.5th 250, 266.) " 'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' [Citation.]" (*Ibid.*) "[A] statute, once duly enacted, 'is presumed to be constitutional. Unconstitutionality must be clearly shown, and doubts will be resolved in favor of its validity.' [Citation.]" (*Lockyer v. City and County of San Francisco* (2004) 33 Cal.4th 1055, 1086.)

## III. Analysis

   a. *Assembly Bill No. 218's retroactive waiver of the Government Claims Act's claim presentation requirement for Code of Civil Procedure section 340.1 claims does not create a new liability or cause of action*

Per *Chapman*, the gift clause prohibits the Legislature from "creat[ing] any liability or cause of action" "where none existed before." (*Chapman*, *supra*, 104 Cal. at p. 696.) In assessing whether legislation improperly permits a plaintiff to sue a defendant on the basis of a new liability or cause of action, the essential question—as framed by our Supreme Court—is whether the defendant's alleged acts or omissions violated a duty or obligation imposed by preexisting law. (See *id.* at pp. 693–696; see also Code Civ. Proc., § 26 ["An obligation is a legal duty, by which one person is bound to do or not do a certain thing, and arises from either of the following: [¶] (a) Contract. [¶] (b) Operation of law."]; *McKee v. Dodd* (1908) 152 Cal. 637, 641 ["A cause of action . . . arises out of an antecedent primary right[9] and corresponding duty and the delict or breach of such primary right and duty by the person on whom the duty rests. 'Of these elements, the primary right and duty and the delict or wrong combined constitute the cause of action in the legal sense of the term . . . .' "]; Black's Law Dict. (12th ed. 2024) p. 1095, quoting Anson, Principles of the Law of Contract (Arthur L. Corbin ed., 3d Am. ed. 1919) p. 9,

---

   [9] "[A] primary right is simply the plaintiff's right to be free from the particular injury suffered." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681.)

fn. 3 [" 'The term "liability" is one of at least double signification. In one sense it is the synonym of *duty*, the correlative of *right*; in this sense it is the opposite of *privilege* or *liberty*. If a duty rests upon a party, society is now commanding performance by him and threatening penalties.' "].) Where this question is answered in the affirmative, no new liability or cause of action has been created by ensuing legislation.

Here, Doe R.L. alleged he was sexually assaulted at his elementary school by his principal on a continuous basis between approximately 1965 and 1969 and the school's secretaries, administrative office staff, and other faculty members were aware of these incidents. (See *Rubenstein*, *supra*, 3 Cal.5th at p. 910 ["A cause of action for childhood sexual molestation generally accrues at the time of the alleged molestation."]; *V.C. v. Los Angeles Unified School Dist.* (2006) 139 Cal.App.4th 499, 510 ["Where the molestation is continuous, accrual is measured from the date of the last molestation."].) As mentioned, the Government Claims Act was enacted in 1963, which added sections 815.2 and 820 to the Government Code. (See Stats. 1963, ch. 1681, § 1, pp. 3266–3269.) Since the statutory provisions imposing vicarious public entity liability for public employees' negligence existed at the time of the alleged childhood sexual assault, District's liability and Doe R.L.'s cause of action accrued decades ahead of Assembly Bill No. 218's enactment. By contrast, in *Chapman*, a negligence claim could not be raised because—at the time of the wharf collapse—there was no contemporaneous law imposing state liability "for the negligent acts of its officers while engaged in discharging ordinary official duties pertaining to the administration of the government of the state." (*Chapman*, *supra*, 104 Cal. at p. 693.)

Our inquiry does not end, however. Pursuant to Government Code former section 911.2, Doe R.L. was required to present "[a] claim relating to a cause of action for . . . injury to [a] person or to personal property . . . not later than the 100th day after the accrual of the cause of action." He apparently failed to do so, which barred him from suing District. (See *Stockton*, *supra*, 42 Cal.4th at p. 734.) As noted, however, Assembly

19.

Bill No. 218 amended the relevant statutes to retroactively waive the Government Claims Act's claim presentation requirement for Code of Civil Procedure section 340.1 claims. (See *ante*, at pp. 6–8, 12–13.)  The issue before us, then, is whether the retroactive waiver of this requirement violates the gift clause.  We conclude it does not.

      i.  <u>The Government Claims Act's claim presentation requirement is the mechanism by which a public entity waives procedural immunity</u>

On appeal and at oral argument, District contends:  (1) compliance with the Government Claims Act's claim presentation requirement is how "a government entity waive[s] immunity"; and (2) the retroactive waiver of this requirement for Code of Civil Procedure section 340.1 claims creates a new liability or cause of action by "eliminat[ing] a public entity's sovereign immunity."  "At common law, the doctrine of sovereign immunity had two strands:  a procedural immunity from suit without the government's consent and a substantive immunity from liability for the conduct of government." (*Quigley*, *supra*, 7 Cal.5th at p. 811; see *State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 347 ["Traditionally, the doctrine of sovereign immunity shielded states from both suit and liability."].)  District's contention assumes the Government Claims Act's claim presentation requirement bears on both procedural and substantive immunity.  This premise is erroneous.

Starting in the late 19th century, the state "would disentangle the two strands of sovereign immunity" (*Quigley*, *supra*, 7 Cal.5th at p. 811) by passing statutes "granting legislative consent to suit" (*id.* at p. 812).  One such statute was the February 28, 1893 statute at issue in *Chapman*, which authorized individuals with " 'claims on contract or for negligence against the state, *not allowed by the state board of examiners*, . . . to bring suit thereon against the state . . . .' " (*Chapman*, *supra*, 104 Cal. at p. 693, italics added.) Our Supreme Court construed this language as "contemplat[ing] that claims against the state *shall first be presented* to the state board of examiners for allowance, and, . . . *it is*

20.

*only on claims so presented*, and 'not allowed by the state board of examiners,' that the state *gives its consent to be sued . . . .*" (*Id.* at p. 697, italics added.) Post-*Chapman* case authority clarified the February 28, 1893 statute "eliminated the state's *procedural* immunity to suit, thus opening the courts to the adjudication of the specified claims." (*Quigley*, *supra*, at p. 811, italics added, citing *Denning v. State of California* (1899) 123 Cal. 316, 319; *Green v. State of California* (1887) 73 Cal. 29, 32–33.)

Under the law existing at the time of the Government Claims Act's enactment, a claim presentation requirement was viewed as the mechanism by which the state consents to be sued, i.e., waives procedural immunity. (*See Voters for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 779, fn. 3 ["[T]he Legislature is presumed to be aware of all laws existent at the time it passes a statute."].) Under the Government Claims Act, "no suit for money or damages may be brought against a public entity" (Gov. Code, § 945.4) unless a timely claim is presented "after the accrual of the cause of action" (*id.*, § 911.2, subd. (a)). Such language is more straightforward than the verbiage of the abovementioned February 28, 1893 statute. In addition, whereas the components of the claim presentation requirement are found across parts 3 and 4 of the Government Claims Act (see Gov. Code, §§ 900 et seq. [titled "Part 3. Claims Against Public Entities"], 940 et seq. [titled "Part 4. Actions Against Public Entities and Public Employees"]), provisions relating to substantive immunity are found in an entirely different part (see *id.*, § 814 et seq. [titled "Part 2. Liability of Public Entities and Public Employees"]). (See *Surfrider Foundation v. California Regional Water Quality Control Bd.* (2012) 211 Cal.App.4th 557, 576 [" '[W]e must "interpret a statute consistently with the meaning derived from its grammatical structure." ' "].) Nothing in either the plain language or structure of the Government Claims Act evinces a legislative intent to broaden the claim presentation requirement's scope beyond procedural immunity. (See *Quigley*, *supra*, 7 Cal.5th at p. 811 ["California law has long distinguished between

limitations on the substantive liability of public entities, on the one hand, and limitations on the power of the courts to hear cases involving public entities, on the other."].)[10]

### ii. The Government Claims Act's claim presentation requirement is not a substantive element of a cause of action against a public entity

District also contends the Government Claims Act's claim presentation requirement constitutes a "substantive element of any cause of action against a public entity." (Boldface & italics omitted.) While we do not dispute "the timely presentation of a claim [i]s an 'element' of a cause of action in the sense that it must be pled in a complaint" (*West Contra Costa*, *supra*, 103 Cal.App.5th at p. 1263), to the extent District believes "satisfaction of the [claim presentation] requirement" should be considered an "aspect of" "the actual wrongful conduct giving rise to a claim" (*id.* at p. 1264), it is mistaken.

As noted, the Government Claims Act draws a clear distinction between the claim presentation requirement and "substantive liability." (See *ante*, at pp. 11–12.) The phrase "substantive liability" is not expressly defined, but we find instructive the language of Government Code section 911.2, subdivision (a), under which a claim cannot be presented until "*after* the accrual of the cause of action." (Italics added; see *V.C. v. Los Angeles Unified School Dist.*, *supra*, 139 Cal.App.4th at p. 508 ["The date of accrual of a

---

[10] District suggests "[a] public entity retain[s] its sovereign immunity *at all times* unless a plaintiff complie[s] with the [Government Claims Act's] claim requirement in effect when the incidents occurred." (Italics added.) However, the Government Claims Act expressly provides: "A public entity may sue and be sued." (Gov. Code, § 945.) According to our Supreme Court, the Legislature "broadly waived common law immunity from suit for all public entities in Government Code section 945." (*Quigley*, *supra*, 7 Cal.5th at p. 813.) Thus, a public entity is not immune at the outset. Instead, substantive immunity from liability " 'does not . . . arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity' " (*Williams v. State of California* (1983) 34 Cal.3d 18, 22) while procedural immunity is actuated by a plaintiff's failure to comply with the claim presentation requirement (see *ante*, at pp. 20–22).

cause of action marks the starting point for calculating the claim[] presentation period."].) "The general rule for defining the accrual of a cause of action sets the date as the time 'when, under the substantive law, the wrongful act is done,' or the wrongful result occurs, and the consequent 'liability arises.' [Citation.] In other words, it sets the date as the time when the cause of action is complete with all of its elements [citations]—the elements being generically referred to by sets of terms such as 'wrongdoing' or 'wrongful conduct,' 'cause' or 'causation,' and 'harm' or 'injury' [citations]." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397; see *Mosesian v. County of Fresno* (1972) 28 Cal.App.3d 493, 500 ["A cause of action normally accrues when under the substantive law the wrongful act is done and the liability or obligation arises, that is, when action may be brought."].) Since a claim must " 'fairly describe what [the] entity is alleged to have done' " (*Stockett v. Association of Cal. Water Agencies Joint Powers Ins. Authority*, *supra*, 34 Cal.4th at p. 446), it cannot be presented prematurely, i.e., before liability under the substantive law is established. (See *West Contra Costa*, *supra*, 103 Cal.App.5th at p. 1260 ["[T]he question of . . . 'substantive liability' is determined by reference to statutes *outside* the claim presentation requirement."], *id*. at p. 1261 ["[S]ubstantive liability existed when the alleged wrongful conduct occurred; timely presentation of a claim . . . was not necessary to render the underlying conduct tortious."], *id*. at p. 1264 ["[A public entity]'s substantive liability for . . . alleged sexual assaults exists independently of the claim presentation requirement."].)

### iii. A public entity's procedural immunity has no bearing on determining whether legislation violates the gift clause

As noted, Doe R.L. did not timely present a claim, which rendered District procedurally immune. (See *ante*, at p. 19.) His failure to comply with the Government Claims Act's claim presentation requirement, however, does not impact the gift clause analysis under *Chapman*. (See *ante*, at pp. 18–20.) In that case, at the time of the wharf collapse, "there was then no law giving to the plaintiff's assignors the right to sue the

state." (*Chapman*, *supra*, 104 Cal. at p. 696.)  Unlike Doe R.L., whose noncompliance triggered District's procedural immunity, the plaintiff in *Chapman* immediately had no recourse to the courts.  (See *Quigley*, *supra*, 7 Cal.5th at p. 803 ["common law rule of governmental immunity" prior to Government Claims Act's enactment].)  Nevertheless, the high court was "entirely satisfied that [the] plaintiff's cause of action, as alleged in the complaint, arises upon contract, and that the liability of the state accrued at the time of its breach . . . ."  (*Chapman*, *supra*, at p. 696.)  It explained:

> " 'The fact that the state is not subject to an action [o]n behalf of a citizen does not establish that he has no claim against the state, or that no liability exists from the state to him.  It only shows that he cannot enforce against the state his claim, and make it answer in a court of law for its liability. . . .' [Citation.]" (*Chapman*, *supra*, 104 Cal. at p. 696.)

We see no reason why we should not adhere to *Chapman* in the instant case.  (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 ["The decisions of [the California Supreme Court] are binding upon and must be followed by all the state courts of California."].)

By retroactively waiving the claim presentation requirement, the Legislature did not create a new liability or cause of action:  it "simply removed an obstacle to recovery imposed by the state as a condition of its consent to suit that is not an aspect of the underlying substantive liability." (*West Contra Costa*, *supra*, 103 Cal.App.5th at p. 1263).[11]

---

[11] District points out a claim presentation requirement "fundamentally differs from a procedural statute of limitations." (Boldface, underscoring & capitalization omitted.) This assertion—with which we do not disagree—does not affect our conclusion the Government Claims Act's claim presentation requirement is not "a substantive aspect of the underlying tortious conduct for which the State has waived [procedural] immunity." (*West Contra Costa*, *supra*, 103 Cal.App.5th at p. 1264.)

b. *Assembly Bill No. 218's retroactive waiver of the Government Claims Act's claim presentation requirement for Code of Civil Procedure section 340.1 claims serves a public purpose*

Even assuming, arguendo, Assembly Bill No. 218 somehow "authorizes expenditures within the scope of the gift clause, the expenditures are not 'gifts' because they serve a public purpose." (*West Contra Costa*, *supra*, 103 Cal.App.5th at p. 1265.)

"[A] public purpose embodies not only expenditures which are necessary for the continued existence of government, but also those 'which may tend to make that government subserve the general well-being of society, and advance the present and prospective happiness and prosperity to the people.' " (*County of San Diego v. Hammond* (1936) 6 Cal.2d 709, 722.) "It is generally held that in determining whether an appropriation of public funds is to be considered a gift, the primary question is whether the funds are to be used for a 'public' or 'private' purpose . . . ." (*Carleson*, *supra*, 5 Cal.3d at p. 745.) "The determination of what constitutes a public purpose is primarily a matter for the Legislature, and its discretion will not be disturbed by the courts so long as that determination has a reasonable basis." (*Id.* at p. 746.) Legislative findings, "while not binding on the courts, are given great weight and will be upheld unless they are found to be unreasonable and arbitrary." (*California Housing Finance Agency v. Elliott* (1976) 17 Cal.3d 575, 583.) Furthermore, "[t]he failure to explicitly state a public purpose is not decisive. The courts may infer the public purpose from other legislation or the manner in which the legislation is enacted." (*Scott v. State Bd. of Equalization* (1996) 50 Cal.App.4th 1597, 1604.)

To reiterate, the purpose of Code of Civil Procedure section 340.1 is " 'to expand the ability of victims of childhood sexual abuse to hold to account individuals and entities responsible for their injuries.' [Citation.]" (*Los Angeles Unified*, *supra*, 14 Cal.5th at p. 777.) "More narrowly, the purpose of 'exempting [s]ection 340.1 civil actions for childhood sexual abuse from government tort claim requirements' is ' " 'to ensure that victims severely damaged by childhood sexual abuse are able to seek compensation from

25.

those responsible, whether those responsible are private or public entities.' " ' [Citation.]" (*West Contra Costa*, *supra*, 103 Cal.App.5th at p. 1265.)  The legislative history of Assembly Bill No. 218 is particularly insightful.  For instance, a Senate Judiciary Committee report detailed:

> " 'Childhood sexual abuse has been correlated with higher levels of depression, guilt, shame, self-blame, eating disorders, somatic concerns, anxiety, dissociative patterns, repression, denial, sexual problems, and relationship problems.'  Given the horrific damage and life-long trauma that can be caused by childhood sexual assault, these claims are arguably worthy of such revival, despite the general disregard for doing so. . . .
>
> "As argued by the author, there has been a dramatic shift in cultural sensitivities around sexual abuse and a more accepting societal climate for victims.  Rather than fearing stigma, victims of past abuse are more likely to be willing to come forward now with claims.  There are complex psychological effects that result from being victimized in this way.  In addition, the systematic incidence of childhood sexual assault in numerous institutions in this country and the cover-ups that accompanied them arguably make both a revival period and an extended statute of limitations warranted.  This bill provides another chance for victims, who are currently barred from purs[u]ing claims based solely on the passage of time, to seek justice." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 218 (2019–2020 Reg. Sess.) as amended Mar. 25, 2019, p. 8, fn. omitted; accord, *West Contra Costa*, *supra*, 103 Cal.App.5th at pp. 1265–1266.)

An Assembly Judiciary Committee report also highlighted "the lifetime of damage that [childhood sexual] abuse causes its victims"; "that the psychological injuries from sexual[] assault emerge later in life and that victims routinely need decades to reach the psychological place where they can come forward"; and "[t]he residual effects of the trauma impact the survivor's education and employment, adding to the economic loss the individual suffers as a result of the crime." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 218 (2019–2020 Reg. Sess.) as introduced Jan. 16, 2019, pp. 1–2, 5, italics omitted; accord, *West Contra Costa*, *supra*, 103 Cal.App.5th at p. 1266.)  Accordingly, we find the public purpose underlying Assembly Bill No. 218 reasonable and leave the Legislature's determination thereof undisturbed.

We also observe "a 'wide variety of welfare and other social programs have been upheld against constitutional challenge' under the gift clause" using a " 'general public welfare' rationale." (*West Contra Costa*, *supra*, 103 Cal.App.5th at pp. 1267–1268; see, e.g., *Carleson*, *supra*, 5 Cal.3d at p. 734 [state plan for aid and services to needy families with children]; *County of Los Angeles v. La Fuente*, *supra*, 20 Cal.2d at p. 876 ["old age security benefits"]; *County of Alameda v. Janssen* (1940) 16 Cal.2d 276, 282 ["release of liens held against the property of indigent recipients of aid"]; *Scott v. State Bd. of Equalization*, *supra*, 50 Cal.App.4th at p. 1605 [legislation "enlarging the time period for filing claims" "giv[ing] unwary taxpayers the benefit of the constitutional provision excluding a parent-child conveyance from reassessment"].) "We believe the Legislature's purpose to aid the disadvantaged group of childhood sex assault victims in the present case is analogous to the intent to offer relief to other disadvantaged groups . . . ." (*West Contra Costa*, *supra*, 103 Cal.App.5th at p. 1268.) "[I]n seeking to aid victims of childhood sexual assault, the public purpose underlying Assembly Bill [No.] 218 is not fundamentally different from the public purpose involved in any of a number of other enactments providing assistance to other disadvantaged classes of persons 'in the best interests of the general public welfare.' " (*Id.* at p. 1269, quoting *Carleson*, *supra*, 5 Cal.3d at p. 746.) "The main difference is the mechanism of expenditure of the public funds: many programs provide direct or indirect subsidies from the public treasury, while Assembly Bill [No.] 218 ensures any public expenditures will be made by entities accountable for the victims' injuries." (*West Contra Costa*, *supra*, at p. 1269.)[12]

---

[12] District cites *Conlin v. Board of Supervisors*, *supra*, 99 Cal. 17, *Orange County Foundation v. Irvine Co.* (1983) 139 Cal.App.3d 195, and *Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431 for the proposition "the appropriation of public funds for the payment of unenforceable claims serves *no public purpose*." (Boldface omitted.) However, these cases are inapposite because they "involved only discrete payments to private parties with no larger public goal . . . ." (*West Contra Costa*, *supra*, 103 Cal.App.5th at p. 1267.)

Both District and CSBA raise legitimate policy concerns pertaining to Assembly Bill No. 218's fiscal impact. Yet, we decline to address them because "recourse is with the Legislature." (*West Contra Costa*, *supra*, 103 Cal.App.5th at p. 1273, fn. 19.)[13] " 'Courts do not sit as super-legislatures to determine the wisdom, desirability or propriety of statutes enacted by the Legislature.' [Citation.] 'In reviewing the constitutionality of legislation, it must be remembered that "[c]ourts have nothing to do with the wisdom of laws . . . , and the legislative power must be upheld unless manifestly abused so as to infringe on constitutional guaranties. . . . The only function of the courts is to determine whether the exercise of legislative power has exceeded constitutional limitations." [Citations.]' [Citation.]" (*In re J.C.* (2017) 13 Cal.App.5th 1201, 1207–1208; accord, *West Contra Costa*, *supra*, at p. 1272.)

c. *A demurrer cannot be sustained on the basis of redundant causes of action*

As noted, District also argued in its demurrer Doe R.L.'s first, third, and fourth causes of action should be dismissed because they were "essentially just a rebranding of the second [cause of action] for Negligent Supervision." (See *ante*, at p. 5.) The superior court never addressed this contention.

In its respondent's brief, District states its "other demurrer argument merely explained . . . that if the case proceeded further it should proceed under only one negligence claim." Redundancy, however, is not enumerated as one of the statutory grounds on which a demurrer may be sustained. (Code Civ. Proc., § 430.10; see *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 890; *McDonell v. American Trust Co.* (1955) 130 Cal.App.2d 296, 303, citing Code Civ. Proc., former §§ 430–431; but see *Palm Springs Villas II Homeowners Assn., Inc. v. Parth* (2016) 248 Cal.App.4th 268, 290 [demurrer may be sustained as to duplicative

---

[13] We note such concerns were considered by the Legislature during the process of enacting Assembly Bill No. 218. (See *West Contra Costa*, *supra*, 103 Cal.App.5th at pp. 1269–1271.)

causes of action].)  "This is the sort of defect that, if it justifies any judicial intervention at all, is ordinarily dealt with most economically at trial, or on a dispositive motion . . . ." (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, *supra*, at p. 890; see *McDonell v. American Trust Co.*, *supra*, at p. 303 [motion to strike].)

### d.  *Conclusion*

Assembly Bill No. 218's retroactive waiver of the Government Claims Act's claim presentation requirement for Code of Civil Procedure section 340.1 claims does not violate the gift clause.  Therefore, the superior court erroneously sustained District's demurrer.[14, 15]

---

[14] Given our analysis is consistent with the reasoning in *West Contra Costa*, *supra*, 103 Cal.App.5th 1243, we necessarily reject District's contention *West Contra Costa* was wrongly decided.

[15] Doe R.L. and District each filed a request for judicial notice.  We deferred our rulings pending consideration of this appeal on its merits.  Now having done so, we address each request.

Doe R.L. asked us to take judicial notice of (1) eight legislative reports demonstrating "the legislative history of Assembly Bill [No.] 218"; and (2) over 60 "orders of the superior courts addressing the constitutionality of Assembly Bill [No.] 218."  We deny his request.  First, the legislative reports are available from published sources.  "A request for judicial notice of published material is unnecessary.  Citation to the material is sufficient."  (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 46, fn. 9.)  Second, we do not find the superior court orders helpful to our resolution of this case.  (See *Associated General Contractors of California, Inc. v. Department of Industrial Relations* (2025) 108 Cal.App.5th 243, 262 [denying request for judicial notice of certain exhibits deemed "not relevant"].)

District asked us to take judicial notice of previous versions of Penal Code section 11161.5 "contain[ing] mandated report requirements enacted from 1963 to 1974."  We are compelled to grant this request (see Evid. Code, § 451, subd. (a) ["[j]udicial notice shall be taken of" "public statutory law of this state"]), but we do not find this material helpful to our resolution of this case.

## **DISPOSITION**

The judgment of dismissal is reversed and the matter is remanded to the superior court for further proceedings consistent with this opinion.  Costs on appeal are awarded to plaintiff and appellant John Doe R.L.


DETJEN, J.

WE CONCUR:


LEVY, Acting P. J.


PEÑA, J.

<u>**CERTIFIED FOR PUBLICATION**</u>

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| JOHN DOE R.L., | F087142 |
| Plaintiff and Appellant, | (Super. Ct. No. 22CV-04187) |
| v. | |
| MERCED CITY SCHOOL DISTRICT, | **ORDER GRANTING REQUEST FOR PUBLICATION** |
| Defendant and Respondent. | |

As the nonpublished opinion filed on August 18, 2025, in the above entitled matter hereby meets the standards for publication specified in the California Rules of Court, rule 8.1105(c), it is ordered that the opinion be certified for publication in the Official Reports.

DETJEN, J.

WE CONCUR:

LEVY, Acting P. J.

PEÑA, J.